# LISA COVILLE *v.* LIBERTY MUTUAL INSURANCE COMPANY
## (AC 18425)

Spear, Vertefeuille and Stoughton, Js.

Argued October 26, 1999—officially released April 11, 2000

*Matthew J. Forstadt,* with whom were *Daniel M. Young* and, on the brief, *Howard C. Kaplan,* for the appellant (plaintiff).

*Edward J. Holahan, Jr.,* with whom, on the brief, were *Kevin J. Gumpper* and *John M. Rowan,* for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Lisa Coville, appeals from the judgment for the defendant, Liberty Mutual Insurance Company, rendered after a jury trial in this action to recover underinsured motorist benefits. She contends that the trial court improperly (1) failed to charge the jury in accordance with the 2 Restatement (Second), Torts §§ 314A and 324 (1965), and (2) charged the jury that it might consider whether the plaintiff was negligent in exiting the vehicle in which she was riding while that vehicle was moving. We reverse the judgment of the trial court and remand the case for a new trial.

The plaintiff brought this action against the defendant pursuant to an automobile liability policy issued to her parents. The defendant did not dispute coverage. The jury reasonably could have found the following facts. On December 4, 1991, the plaintiff was a passenger in a pickup truck driven by her boyfriend, James Beddington. She suffered permanent brain injury, including traumatic epilepsy, when she fell from the truck during the early morning hours. On the previous evening, December 3, Beddington picked up the plaintiff from her parents' home at approximately 9 p.m. They then went to a bar in Stamford, where they remained until

approximately midnight. At the bar, the plaintiff consumed several drinks, and Beddington drank at least eight beers. Neither of them had anything to eat. Both the plaintiff and Beddington became intoxicated. At times after becoming intoxicated, the plaintiff was semiconscious and unable to care for herself. Around midnight, Beddington wanted to leave to take the plaintiff home, but the plaintiff wanted to visit a friend who resided across the street from the bar. The plaintiff and Beddington quarreled, and the plaintiff told him that she did not want to leave with him because he had had too much to drink and was intoxicated. Outside the bar, the plaintiff ran from Beddington, up an embankment to the top of a seawall fifteen to twenty feet above street level. Beddington ran after her and caught her.

The plaintiff continued to protest Beddington's effort to take her home. Nevertheless, he put his arms around her, dragged her down the hill and hoisted her up into the cab of his truck. He did not fasten the plaintiff's seat belt or lock the plaintiff's door. The plaintiff was angry at Beddington and kicked at the windshield. Beddington began to drive the plaintiff home. When the truck was stopped on Grove Street, the plaintiff suddenly opened the door. Beddington reached over, closed the door and resumed driving. As the truck approached a traffic signal at Grove Street and Strawberry Hill Avenue, the plaintiff opened the door a second time. Again, Beddington closed the door. After the truck passed the traffic signal, the plaintiff opened the door a third time. Beddington reached over to close the door with his right hand, keeping his left hand on the steering wheel. The truck suddenly swerved to the right toward a utility pole. Beddington then put both hands on the steering wheel and turned the truck back to the left. As the truck straightened, he heard the door close and realized that the plaintiff was not in the vehicle. Through his rearview mirror, Beddington saw the

plaintiff lying in the road. He backed up the truck, picked up the plaintiff and took her to a hospital.

At trial, the defendant did not contest its obligation to compensate the plaintiff for injuries for which Beddington, as the operator of an underinsured vehicle, was liable. The jury returned a verdict finding the plaintiff 65 percent negligent, and, therefore, the trial court rendered judgment in favor of the defendant.

I

The plaintiff first claims that the court improperly failed to charge the jury in accordance with §§ 314A and 324 of the Restatement (Second) of Torts. We agree.

Jury instructions are adequate if they give the jury a clear understanding of the issues in the case and proper guidance in deciding those issues. *Tomczuk* v. *Alvarez*, 184 Conn. 182, 190, 439 A.2d 935 (1981). "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing the court's instruction, our role is to determine whether, taken as a whole, [it] fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law. . . . [A] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given . . . ." (Citations omitted; internal quotation marks omitted.) *Glucksman* v. *Walters*, 38 Conn. App. 140, 157, 659 A.2d 1217, cert. denied, 235 Conn. 914, 665 A.2d 608 (1995).

In her request to charge, the plaintiff requested that the following charge be given pursuant to 2 Restatement (Second), supra, § 314A (4), p. 118: "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his or her normal opportunities for protection

is under a special duty to the other. . . . It is for you to determine whether James Beddington voluntarily took custody of [the plaintiff] under such circumstances as to deprive her of her normal opportunities for protection so as to create a duty on the part of James Beddington to protect her. . . . It is for you to determine whether James Beddington placed [the plaintiff] in his pickup truck against her wishes and involuntarily and whether or not by doing so he assumed a special relationship toward her wherein he would be required to fasten her seat belt, lock the door, stop the truck upon her request, or permit her to call her parents and/or to otherwise get a ride home from someone else. . . ." (Citations omitted; internal quotation marks omitted.)

The plaintiff further requested the following charge pursuant to 2 Restatement (Second), supra, § 324, p. 139, and *McDonough* v. *Buckeye S.S. Co.*, 103 F. Sup. 473, 475 (N.D. Ohio 1951), aff'd, 200 F.2d 558 (6th Cir. 1952), cert. denied, 345 U.S. 926, 73 S. Ct. 785, 97 L. Ed. 1357 (1953): "One who voluntarily takes charge of a helpless person must exercise reasonable care for [her] welfare and safety. . . . You have heard the testimony of the parties and must determine whether or not James Beddington voluntarily assumed custody over [the plaintiff] by placing her in his motor vehicle against her wishes." (Citations omitted; internal quotation marks omitted.)

The court failed to give either charge and instead charged the jury with respect to the customary duty owed by a motor vehicle operator to his passenger. The plaintiff contends that both requested charges were relevant to the issues of the case and accurately stated the law, and that the court therefore should have given the charges as requested. We agree.

The Restatement of Torts is a "statement of the general common law of the United States . . . ." 1

Restatement, Torts, introduction, p. viii (1934). The periodic revision of the Restatement provides the opportunity to update the Restatement in light of changes in decisional law. 1 Restatement (Second), Torts, introduction, p. ix (1965).

Section 314A of the Restatement (Second) states an exception to the general rule that a person who realizes or should realize that he or she needs to act to protect another is not necessarily obligated to do so. That section explicitly recognizes the duties of common carriers, innkeepers and possessors of land to protect their passengers, guests and members of the public, respectively, from unreasonable risk of physical harm. Additionally, § 314A (4) provides that "[o]ne . . . who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to [protect] the other." 2 Restatement (Second), Torts § 314A, p. 118 (1965). Comment (b) to § 314A explains that "[t]he duties stated in this Section arise out of special relations between the parties, which create a special responsibility, and take the case out of the general rule. The relations listed are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found. . . . The law appears, however, to be working slowly toward a recognition of the duty to aid or protect in any relation of dependence or of mutual dependence." Id., p. 119.

Section 324 of the Restatement (Second) provides in relevant part that "[o]ne who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge . . . ." Id., p. 139. The emphasis in this section

is on the fact that "the plaintiff is in a helpless position
. . . ." Id., § 324, comment (a), p. 140. Comment (b) to
§ 324 states that "[t]he rule stated in this Section is
applicable whenever one takes charge of another who is
incapable of taking adequate care of himself. It applies
equally where the other is rendered helpless by his own
conduct, by the tortious or innocent conduct of the
actor, or by other causes, as where the actor takes
charge of one who is ill, drunk, or made helpless by
the act of a third person or a force of nature." Id., § 324,
comment (b), p. 140.

The duties described in these two sections of the
Restatement (Second) are well recognized in leading
treatises on the law of torts. Prosser and Keeton
acknowledge the trend to extend liability where a per-
son by his or her conduct assumes a duty to protect
another. W. Prosser & W. Keeton, Torts (5th Ed. 1984)
§ 56. They explain that this duty arises particularly in
special relationships where "the plaintiff is typically
in some respect particularly vulnerable and dependent
upon the defendant who, correspondingly, holds con-
siderable power over the plaintiff's welfare." Id., p. 374.
The treatise concludes that a person who takes charge
of an intoxicated party "is regarded as entering volunta-
rily into a relation which is attended with responsibil-
ity." Id., p. 378. Another leading tort treatise, citing
§ 314A of the Restatement (Second) of Torts and case
law, also endorses the legal principle that special rela-
tionships can give rise to an affirmative duty to protect
others from harm. 3 F. Harper, F. James & O. Gray,
Torts (2d Ed. 1986) § 18.6, pp. 723–24 n.25.

Although neither of Connecticut's appellate courts
has adopted §§ 314A or 324, the duties set forth in those
sections are consistent with the recognized principle
of Connecticut law that one who gratuitously under-
takes an act will be liable for performing it negligently.
"If one undertakes to perform an act and performs it

negligently . . . it makes no difference whether . . . the act was performed gratuitously . . . ." *Zatkin* v. *Katz*, 126 Conn. 445, 450, 11 A.2d 843 (1940). One who gratuitously undertakes a service that he has no duty to perform must act with reasonable care in completing the task assumed. See id.

The defendant contends that the requested jury charges were not statements of the law in this state solely because neither has been adopted or approved by the appellate courts of this state. We find that the defendant's approach is too constricted. The sections of the Restatement (Second) in question describe reasonable legal duties applicable in certain limited factual circumstances. The defendant points to no controversy among legal commentators concerning these duties. To the contrary, the duties described in §§ 314A and 324 are recognized in leading tort treatises. Furthermore, they are consistent with established principles of Connecticut tort law. Under these circumstances, the court should have instructed the jury in accordance with the requested charge.

The defendant further claims that neither of the requested charges is applicable to the facts of this case and that the charge given adequately instructed the jury. We do not agree.

The defendant contends that the only duty Beddington owed the plaintiff was the ordinary duty of a motor vehicle operator to his passenger and that the court properly charged the jury in that regard. For example, the court charged the jury that it should consider whether Beddington failed to exercise reasonable care in failing to fasten the plaintiff's seat belt or lock her passenger side door. The defendant's contention, however, wholly disregards the evidence that Beddington took physical custody of the plaintiff against her will by physically taking her to his truck, lifting her

inside and forcing her to remain by closing the door each time she opened it. This evidence could provide the basis for a duty to protect the plaintiff rather than a duty of reasonable care. The jury could have found further that the plaintiff was helpless in that she was intoxicated to the point of being semiconscious and was unable to take care of herself. This evidence also could provide the basis for a duty to secure the plaintiff's safety.

We conclude that there was an adequate factual basis for the jury charges requested by the plaintiff. We conclude further that the charge given, limited as it was solely to the customary duty of reasonable care from a driver to his passenger, did not provide adequate guidance to the jury on the facts of this case, which facts provided the basis for finding additional duties to protect the plaintiff or secure her safety. The charge given failed to give the jury any guidance with respect to the plaintiff's claim that Beddington had taken custody or charge of her.

The defendant also claims that the requested instructions were outside the issues as framed in the pleadings, contending that the plaintiff had failed to plead a "special relationship" between herself and Beddington. We disagree.

The plaintiff's one count complaint alleged negligence by Beddington in various respects. She alleged that her injuries were caused by Beddington's negligence in forcing her to enter his vehicle and to remain there against her wishes, and that his driving ability was impaired by his intoxication. Practice Book § 10-4 provides that "[i]t is unnecessary to allege any promise or duty which the law implies from the facts pleaded." In *Murphy* v. *Wakelee*, 247 Conn. 396, 399 n.2, 721 A.2d 1181 (1998), our Supreme Court concluded that a count in the complaint alleged a claim of breach of fiduciary

duty where the defendant was a conservator and there was no specific allegation of fiduciary duty. In this case, the duty to protect, as set forth in Restatement (Second), §§ 314A and 324, is appropriately implied from the factual allegations of the plaintiff's complaint.

The defendant contends that the plaintiff waived her claim with respect to the request to charge under § 324 of the Restatement (Second). We do not agree.

The defendant's claim is based on the following facts. After receiving requests to charge from the parties, the trial judge prepared a draft of his charge and provided copies to both counsel to be reviewed. Counsel were given the morning to review the charge and to prepare possible changes. In the afternoon, the court held a charge conference on the record, stating that the court and counsel would resolve any parts of the charge that were not agreed to. Counsel for the plaintiff did not mention his request to charge pursuant to § 324 of the Restatement (Second) during the charge conference and, although he took exception during the conference to the court's decision not to charge under § 314A of the Restatement (Second), he did not take a similar exception with respect to the charge under § 324.

Pursuant to Practice Book § 16-20, a party may preserve appellate review of a written request to charge without taking an exception to the court's failure to charge as requested. Our rules of practice do not require that a party must take exception to the court's failure to charge in accordance with a written request to charge. *State* v. *Angell*, 237 Conn. 321, 329, 677 A.2d 912 (1996). Waiver is the intentional relinquishment of a known right. *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 561, 316 A.2d 394 (1972). There is no sufficient showing here that the plaintiff intentionally relinquished her request to charge pursuant to § 324 of the Restatement (Second).

## II

The plaintiff next contends that the court improperly charged the jury that in considering whether the plaintiff was negligent, it might consider whether she exited the vehicle in which she was riding while the vehicle was moving. It is highly unlikely that the evidence on this question will change in any significant way in the new trial, making it likely that this issue will arise again. We therefore will review the plaintiff's claim. The plaintiff claims that there was no evidence from which the jury could find that she voluntarily left Beddington's truck. We disagree.

"[T]riers of fact must often rely on circumstantial evidence and draw inferences from it." *Blados* v. *Blados*, 151 Conn. 391, 395, 198 A.2d 213 (1964). "Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact." Id.

The defendant concedes that there was no direct evidence that the plaintiff intentionally exited the truck, but contends that the jury could properly have inferred that she exited the vehicle while it was moving on the basis of her testimony that she earlier had opened the truck door twice to leave the vehicle. The plaintiff counters that the truck was stopped at both of the earlier times that she opened the door and, therefore, an inference that she left the vehicle while it was moving would be unwarranted.

A review of the transcript of the testimony of both the plaintiff and Beddington shows contradictory testimony concerning whether the truck in fact was stopped when the plaintiff opened the door the second time. The plaintiff testified that she twice opened the door to leave at the red traffic signals. Beddington, however, testified

that he thought, but was not sure, that on the second occasion when the plaintiff opened the door, the signal turned from red to green as he approached it so that he did not actually stop the truck. At another point in his testimony, he stated that he had stopped the truck for the traffic signal, but then started again when the plaintiff opened the door the second time.

Given Beddington's testimony that the truck was not stopped when the plaintiff opened the door the second time, we conclude that there was sufficient evidence, if believed, from which the jury could infer that on the third occasion when the plaintiff opened the door, she exited the truck while it was moving. The court, therefore, properly instructed the jury in this respect.

The judgment is reversed and the case is remanded for a new trial.

In this opinion SPEAR, J., concurred.

STOUGHTON, J., dissenting. Because I believe that the trial judge properly charged the jury on the duty owed by James Beddington to the plaintiff, a passenger in his motor vehicle, I respectfully dissent from the opinion of the majority.

This is not the case of a bystander who, under no duty to protect a stranger from risk of harm, takes the stranger into his custody and thereby may assume a duty arising out of that special relationship to use whatever degree of care may be reasonable under the circumstances to protect the stranger from risk of harm. Neither is it the case of a volunteer who takes a person who is helpless to protect himself into his charge and thereby may assume a duty of reasonable care to secure the safety of that person. This is a case, not unique in our times, of a couple out for the evening, each of whom had consumed too much alcohol, with the unhappy result described in the majority opinion. The duty owed

by Beddington to the plaintiff was the duty to exercise reasonable care for her safety under the circumstances, and the trial court so instructed the jury. The duty arose because the plaintiff was a passenger and Beddington was the driver, not because she was intoxicated and Beddington wanted to drive her home against her wishes. I believe that the plaintiff's condition affected the degree of care expected under the circumstances, but it did not itself *create* the duty to exercise reasonable care for her safety.

There was evidence from which the jury might reasonably have found the facts recited in the majority opinion. After the plaintiff had recovered damages from Beddington's liability insurance carrier, she brought this action as an insured under the uninsured motorist provisions of her father's automobile insurance policy. She alleged that Beddington was underinsured and that she had sustained injuries through his negligence. The court charged, as agreed by the parties, that by virtue of its policy the defendant had agreed to pay damages that an insured is legally entitled to recover from an operator of an underinsured motor vehicle, and that the operator's liability for those damages must arise out of the negligent operation of the motor vehicle.

After charging that the defendant admitted coverage for damages caused by the negligence of Beddington, the court defined negligence and the duty of a driver to his guest. It defined reasonable care and instructed the jury that care must be proportionate to the danger. It then discussed the specifications of negligence in the complaint, the plaintiff's claim that Beddington had placed her in a perilous situation and that he had failed to exercise reasonable care for her safety as alleged in the specifications of negligence. These included her claim that Beddington compelled her to enter and remain in his vehicle, that he refused to stop and let her get out, that he failed to lock the passenger side

door or fasten her seat belt when he knew she was not in any condition to do so herself, and that he drove while his faculties and judgment were impaired. The court then discussed proximate cause, damages and contributory negligence as alleged by the defendant.

By answers to interrogatories, the jurors stated that they had found both the plaintiff and Beddington guilty of negligence, which was a substantial factor in producing the plaintiff's injuries, and that they had assigned responsibility at 35 percent to Beddington and 65 percent to the plaintiff.

In my judgment, the court adequately defined and explained the issues for the jury. "Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." *Dean* v. *Hershowitz*, 119 Conn. 398, 407–408, 177 A. 262 (1935). "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). This was not a case in which it was asserted that Beddington owed no duty of care. The issues were whether the duty was breached and whether the plaintiff herself was negligent.

I do not believe that either of the sections from the Restatement (Second) of Torts, cited by the plaintiff in her request to charge, had any application to this case. Section 314 of the Restatement (Second) of Torts states that a duty to aid or protect another does not arise merely out of awareness of the necessity for action. The Restatement (Second) points out in § 314A that special relations between the parties may give rise to such a duty as an exception to the general rule that one who realizes or should realize that he or she needs to act to protect another is not necessarily obligated to do so. The four special relations stated under this

exception are (1) the duty of a common carrier to its passengers, (2) the duty of an innkeeper to his guests, (3) the duty of a landowner who invites the public onto his land and (4) the duty of one who is required by law or who voluntarily takes custody of another under circumstances such as to deprive the other of his normal opportunities for protection. 2 Restatement (Second), Torts § 314A, p. 118 (1965). I do not believe that Beddington took custody of the plaintiff under circumstances such as to deprive her of her normal opportunities for protection when he was simply trying to take her to her home. Moreover, even if this exception were to be found applicable, comment (e) to § 314A states that the duty that arises is "only one to exercise reasonable care under the circumstances." Id., p. 120. This is precisely the duty described in the jury charge as given.

Section 324 of the Restatement (Second) of Torts states that "[o]ne who, being under no duty to do so, takes charge of another who is helpless adequately to . . . protect himself is subject to liability to the other for any bodily harm caused to him by [inter alia] (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge . . . ." Id., p. 139. I do not believe that the jury could have found from the evidence that the plaintiff was in such a condition that she was helpless to protect herself adequately. To the contrary, there was evidence that she did not want to be driven home and struggled against Beddington's efforts to do so. The concept of reasonable care as measured by the circumstances was adequately presented and explained to the jury in the charge as given. Comment (d) to § 324 states that the care required is "only that which the recipient of gratuitous services is entitled to expect"; id., p. 141; that is to say, reasonable care under the circumstances, and that is precisely what the court charged.

Because I do not believe that the principles cited from the Restatement (Second) in the plaintiff's request to charge were applicable to this case, and because I believe that the charge as given adequately instructed the jury as to the law to be applied to the facts, I would affirm the judgment of the trial court.