### LISA MAREK *v.* WAYNE GOING
### (AC 20936)

Schaller, Flynn and O'Connell, Js.

---

558

Argued June 12—officially released October 30, 2001

*Brian W. Prucker*, for the appellant (plaintiff).

*Todd W. Whitford*, with whom, on the brief, was *Jack G. Steigelfest*, for the appellee (defendant).

*Opinion*

O'CONNELL, J. In this negligence action,[1] the plaintiff appeals from the judgment, rendered following a jury trial, in favor of the defendant. The plaintiff claims that

---

[1] The plaintiff voluntarily withdrew a second count alleging recklessness, and, at the close of the plaintiff's case-in-chief, the trial court directed the verdict in the defendant's favor as to count three, which alleged an intentional tort. The plaintiff does not claim that the directing of the verdict was improper.

the trial court improperly failed to instruct the jury on (1) the duty owed to a helpless person and (2) the duty owed to a person over whom the defendant had assumed control. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. It was a dark and stormy night. It had been snowing since noon, and all the principals in this scenario, some of whom had been drinking alcoholic beverages, were gathered in the defendant's residence. At about 10 p.m., the defendant went outside to resume clearing the snow from his driveway with a backhoe equipped with a bucket loader. When the plaintiff came out of the house, she saw the defendant, her boyfriend at the time, in the cab of the backhoe with another woman. She failed to observe that another person, a male, was also in the cab. The plaintiff became jealous and upset and ran out into the snow wearing only a T-shirt, jeans and sneakers.

The plaintiff planted herself in front of the defendant's moving backhoe, forcing him to bring it to a stop. The defendant shouted to her to get out of the way, but instead she stepped into the bucket that was positioned about six inches above the ground. The plaintiff was shouting obscenities at the defendant because she was angry with him, and he was shouting at her to get out of the bucket. She refused to do so. In an effort to get her to leave the bucket, the defendant slowly raised it about three feet and then lowered it to the ground while continuing to yell at her to get out. The defendant raised and lowered the bucket three times, each one higher than the preceding time, but each time then lowered it back to the ground to give the plaintiff an opportunity to step out. When the bucket eventually reached about six feet in the air and was motionless, the plaintiff either jumped or fell from the side of it, sustaining the injuries that are the subject of this action.

At trial, the plaintiff filed written requests that the court instruct the jury pursuant to 2 Restatement (Second), Torts §§ 324[2] and 314A[3] (1965). The court denied both requests and instructed the jury on conventional negligence and comparative negligence. The jury found the defendant 45 percent negligent and the plaintiff 55 percent negligent and, accordingly, returned a defendant's verdict. Additional facts are included in the analysis of the following issues.

[2] The plaintiff filed the following request to charge concerning § 324 of the Restatement (Second): "It is also the law of this state that one who voluntarily takes charge of a helpless person must exercise reasonable care for her welfare and safety. It is for you, therefore, to determine if the plaintiff Lisa Marek was a helpless person at the time of this incident, and whether the defendant Wayne Going took charge of her voluntarily when he raised her up in the bucket of his backhoe. If you find that she was a helpless person, and if you find that the defendant assumed charge or custody of her, you shall determine whether he then took reasonable care to protect her safety. If after finding that the plaintiff was a helpless person and after finding that the defendant assumed charge or custody of her you then find that he did not take reasonable care for her safety, you shall find the defendant negligent and shall turn to the issue of damages. *Coville* v. *Liberty Mutual Ins. Co.*, 57 Conn. App. 275 [748 A.2d 875, cert. granted, 253 Conn. 919, 755 A.2d 213] (2000) [appeal withdrawn March 30, 2001]; [2] Restatement (Second), Torts § 324 [1965]."

[3] The plaintiff filed the following request to charge concerning § 314A of the Restatement (Second): "It is the law of this state that one who is required by law or who voluntarily takes custody of another under circumstances such as to deprive the other of his or her normal opportunities for protection is under a special duty to the other. It is for you to determine whether the defendant Wayne Going was required by law or voluntarily took custody of the plaintiff Lisa Marek so as to deprive her of her normal opportunities for protection when he raised the bucket of the backhoe so as to create a duty on his part to protect her. It is for you to determine whether when [the defendant] raised the bucket, he did so against [the plaintiff's] wishes and, in doing so, whether he assumed a special relationship toward her wherein he would be required to carefully return her to the ground and to refrain from shaking the bucket. If you find that the defendant . . . assumed such a special relationship and that he did not then take special care in returning her to the ground, you shall find that he was negligent and turn to the issue of damages. *Coville* v. *Liberty Mutual Ins. Co.*, 57 Conn. App. 275 [748 A.2d 875, cert. granted, 253 Conn. 919, 755 A.2d 213] (2000) [appeal withdrawn March 30, 2001]; [2] Restatement (Second), Torts § 314A [1965]."

## I

Section 324[4] of the Restatement (Second) recites the obligations of a person who takes charge of a helpless individual. The plaintiff relies heavily on *Coville* v. *Liberty Mutual Ins. Co.*, 57 Conn. App. 275, 748 A.2d 875, cert. granted, 253 Conn. 919, 755 A.2d 213 (2000) (appeal withdrawn March 30, 2001).[5] On appeal, the plaintiff argues that she was a "helpless" person because she was intoxicated and compares her circumstances to those of the plaintiff in *Coville*, who was found to be helpless because of intoxication. There is a vast difference between the condition of the plaintiff in *Coville* and the plaintiff's condition in this case. In *Coville*, the plaintiff had consumed alcohol to the point of being semiconscious and completely unable to care for herself. Id., 277. At a hospital emergency room,[6] the *Coville* plaintiff was found to have a blood alcohol content of 0.38 percent.[7]

In the present case, although there was evidence that the plaintiff had consumed alcohol, there was no evi-

---

[4] 2 Restatement (Second), supra, § 324, p. 139, titled, "Duty of One Who Takes Charge of Another Who is Helpless," provides in relevant part: "One who, being under no duty to do so, *takes charge* of *another who is helpless* adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge . . . ." (Emphasis added.)

[5] The plaintiff in Coville brought an underinsured motorist claim against Liberty Mutual Insurance Company pursuant to a policy that it had issued. The plaintiff sustained injuries while a passenger in an underinsured vehicle.

The appeal to the Supreme Court was withdrawn prior to a decision from that court.

[6] *Coville* v. *Liberty Mutual Ins. Co.*, Conn. Appellate Court Records & Briefs, October Term, 1999, Appendix, Appellant's Brief, p. A-2.

[7] A blood alcohol content (BAC) of 0.38 percent refers to a ratio of alcohol in the blood that is thirty-eight hundredths of 1 percent of alcohol by weight. For purposes of comparison, a person is deemed under the influence of alcohol to the extent that he may not operate a motor vehicle if his BAC is ten-hundredths of 1 percent (0.10 percent) or more of alcohol by weight. General Statutes § 14-227a (a).

dence that she was semiconscious or in any other way helpless. To the contrary, the plaintiff herself testified that she was not intoxicated at the time. It is disingenuous for the plaintiff to testify that she was not intoxicated and then claim the benefit of a rule that would assist her only if she was intoxicated to the point of helplessness. In oral argument before this court, the plaintiff's counsel frequently referred to the plaintiff as being impaired, as opposed to referring to her as being intoxicated.[8] He also conceded that the evidence did not show that she was intoxicated, but only that she had consumed six beers over the period of five hours. The evidence does not support a conclusion that the plaintiff was helpless due to intoxication.

Additionally, the plaintiff claims that because she had no access to the bucket controls, she became unable to help herself once the bucket was elevated. Section 324 of the Restatement (Second), however, refers to a person who is already helpless when the defendant takes control of her. The plaintiff in *Coville* was semiconscious and indisputably helpless at the time that the tortfeasor had taken her into custody. She did not become helpless by virtue of any act of the tortfeasor after he assumed control of her. In the present case, the plaintiff was not helpless when she stepped into the bucket.

The court, therefore, properly declined to charge the jury in accordance with § 324 of the Restatement (Second).

## II

The plaintiff also claims that the court improperly declined to charge the jury pursuant to § 314A of the

---

[8] The plaintiff's counsel argued to the trial court: "I don't think there's been any proof of intoxication on my client's behalf or on the defense."

Restatement (Second).[9] This section creates a duty to aid or protect an individual who is taken into custody under circumstances such as to deprive him of his normal opportunities for protection. The issue here is whether the defendant took the plaintiff into custody so as to deprive her of her normal opportunities for protection.

The plaintiff again relies on *Coville* v. *Liberty Mutual Ins. Co.*, supra, 57 Conn. App. 275. *Coville* is equally unavailing on this issue. It is easily distinguished on the facts. In *Coville*, the tortfeasor "took physical custody of the plaintiff against her will by physically taking her to his truck, lifting her inside and forcing her to remain by closing the door each time she opened it." Id., 282–83.

By contrast, in the present case, the defendant did not take the plaintiff into custody by putting the plaintiff into the bucket against her will; she voluntarily stepped into it. In fact, the evidence is clear that the defendant did not want the plaintiff in the bucket, that he repeatedly yelled at her to get out of it, and that, on several occasions, he lowered the bucket to the ground so that she could step out. There is no evidence that the plaintiff demanded to be let out. The only evidence is that the plaintiff apparently insisted on remaining in the bucket contrary to the defendant's requests.

Lifting the bucket while the plaintiff was in it may have breached a duty of reasonable care that the defen-

---

[9] 2 Restatement (Second), supra, § 314A, p. 118, titled, "Special Relations Giving Rise to Duty to Aid or Protect," provides in relevant part:

"(1) A common carrier is under a duty to its passengers to take reasonable action

"(a) to protect them against unreasonable risk of physical harm, and

"(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

\* \* \*

"(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other."

dant owed to the plaintiff, but that was ordinary negligence, and the jury did not absolve the defendant from all ordinary negligence. It found him 45 percent negligent. The facts of the present case would not permit a reasonable jury to find that the defendant had taken custody of the plaintiff by depriving her of her usual opportunities for protection. She had those opportunities and repeatedly declined to take advantage of them.

Furthermore, in her complaint, the plaintiff alleged only that she "was riding in or on the bucket." She did not allege that she had been placed in the bucket or had been forced into it, nor did she allege that the facts gave rise to a special relationship requiring care beyond that of reasonable conduct. Her complaint set forth a straightforward, traditional negligence claim, and the court properly instructed the jury on each of her claims of negligence.

Because the plaintiff did not plead the existence of a special relationship, i.e., custody of a helpless person, the defendant could not respond or prepare his case to defend against such a claim.

"It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [her] complaint." (Internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 496, 646 A.2d 1289 (1994). Although the modern trend is to construe pleadings broadly rather than narrowly and technically, they must give notice of the facts claimed and the issues to be tried. Id.

In *Coville*, the plaintiff alleged that "her injuries were caused by [the tortfeasor's] negligence in forcing her . . . to remain [in his truck] against her wishes . . . ." *Coville* v. *Liberty Mutual Ins. Co.*, supra, 57 Conn. App. 283. "Practice Book § 10-4 provides that '[i]t is unnecessary to allege any promise or duty which the law implies from the facts pleaded.' " Id. The complaint in the pre-

sent case, unlike in *Coville*, did not allege any facts implying a duty arising out of taking custody of a helpless person.

"The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding." (Internal quotation marks omitted.) *Goodmaster* v. *Houser*, 225 Conn. 637, 648, 625 A.2d 1366 (1993). The facts here do not support a charge under §§ 314A and 324 of the Restatement (Second), and, accordingly, the court properly refused to give such a charge to the jury.

The judgment is affirmed.

In this opinion the other judges concurred.