2011 VT 31

David S. CHASE, M.D. v. AGENCY OF HUMAN SERVICES, Department of Health, Board of Medical Practice, State of Vermont, et al.

[19 A.3d 167]

No. 10-122

¶ 1. March 8, 2011. Plaintiff David Chase appeals the superior court's judgment in favor of defendant Philip Ciotti with respect to plaintiff's claim under 42 U.S.C. § 1983 that defendant, an investigator for the State, knowingly falsified an affidavit submitted as grounds to summarily suspend plaintiff's medical license. The superior court concluded that defendant was entitled to summary judgment based on the doctrine of qualified immunity. We affirm insofar as we agree with the court that the assertions in the affidavit prepared by defendant did not deviate materially from those made by the affiant in a deposition conducted by plaintiff's attorney, and that no clearly established law precluded defendant from paraphrasing the affiant's assertions in a manner that did not materially alter them.

¶ 2. Plaintiff had been practicing general ophthalmology and eye surgery for over thirty years when, on July 20, 2003, the State moved the Medical Practice Board to summarily suspend his medical license for allegedly recommending and performing medically unnecessary cataract surgeries. The State's motion was based in part on a July 17, 2003 affidavit prepared by defendant and signed by one of plaintiff's former employees, Amy Landry. The affidavit indicated, among other things, that plaintiff had purposefully falsified medical records to pressure patients into undergoing unnecessary cataract surgery. On July 21, 2003, the Board summarily suspended plaintiff's license to practice medicine.

¶ 3. On December 1, 2003, the State filed a superseding specification of charges, alleging 136 counts of unprofessional conduct concerning thirteen patients to whom plaintiff had recommended cataract surgery. Three weeks later, on December 22, 2003, plaintiff's attorney took Ms. Landry's deposition. In February 2004, plaintiff moved the Board to reinstate his license and dismiss the charges against him, arguing, among other things, that the State falsified evidence and interfered with witnesses in violation of his due process rights. The Board denied the motion to dismiss, noting that numerous additional charges independent from the assertions contained

in the challenged affidavit provided sufficient grounds to warrant summary suspension of plaintiff's license. The Board nevertheless granted plaintiff's motion to reinstate his license based on the appearance of impropriety; however, in April 2004, plaintiff agreed not to practice medicine until final resolution of the charges against him.

¶ 4. Between September 2006 and February 2008, after plaintiff was acquitted of federal charges pertaining to his medical practice, the Board conducted a merits hearing on the State's charges against him. In its December 2007 decision, the Board concluded that plaintiff had engaged in unprofessional conduct with respect to his treatment of ten patients. The Board's determination was based on its findings that Dr. Chase made inaccurate diagnoses about the patients' vision before recommending surgery and further made confusing and misleading statements to his patients as to whether they should obtain a second opinion regarding the need for surgery. The Board further found that Dr. Chase's conduct toward the patients represented a gross failure to exercise reasonable care, which amounted to a failure to practice competently and, in some instances, dishonorable conduct. As for plaintiff's due process claims, the Board stated that "the evidence does not establish that the State was intentionally falsifying evidence or perpetrating a fraud upon the Board." This Court affirmed the Board's decision in *In re Chase*, 2009 VT 94, 186 Vt. 355, 987 A.2d 924, concluding, among other things, that plaintiff "received a full and fair opportunity to defend himself against the State's charges, and that he did in fact mount a vigorous defense to the charges in a thorough and lengthy merits hearing." *Id.* ¶ 24.

¶ 5. Meanwhile, during the Board proceedings, plaintiff filed a civil rights action in the superior court, rather than await the Board's decision, regarding his due process claims. In April 2007, the superior court dismissed all counts based on a lack of subject matter jurisdiction and the doctrine of primary jurisdiction. On appeal, we dismissed as moot all of plaintiff's claims seeking injunctive relief insofar as the proceedings before the Board had ended at that point and there was no pending proceeding susceptible to the requested remedies of injunction or dismissal. *Chase v. State*, 2008 VT 107, ¶ 12, 184 Vt. 430, 966 A.2d 139. Regarding plaintiff's claims for money damages from individual defendants, we remanded those counts to the superior court for further consideration, noting that the court had previously declined to address them until the Board proceedings were completed. *Id.* ¶ 18.

¶ 6. Following our remand, the superior court dismissed all of the remaining defendants in the case except for Mr. Ciotti, whom plaintiff accused of purposefully falsifying the affidavit he had prepared for Ms. Landry's signature. In March 2009, defendant moved for summary judgment, arguing, in part, that the assertions in the July 2003 affidavit did not deviate materially from Ms. Landry's testimony in her December 2003 deposition conducted by plaintiff's attorney. In support of his motion, defendant asked the court to compare the July 2003 affidavit with Ms. Landry's deposition testimony and with her October 2003 affidavit submitted in another civil case not involving defendant. In its November 2009 summary judgment decision, the superior court rejected, as a matter of law, plaintiff's claims that defendant knowingly falsified the affidavit that he had prepared for Ms. Landry to sign and then failed to investigate Ms. Landry's concerns about the affidavit. The court concluded that defendant was entitled to qualified immunity because: (1) there is no clearly established law stating that an investigator's creation of a false affidavit for use in a civil administrative proceeding is a due

process violation; and (2) even if plaintiff could show that clearly established law prohibited the use of knowingly false affidavits in civil administrative proceedings, a reasonable investigator in defendant's position would have had no reason to know that he was violating established law by merely using his own words to accurately paraphrase the affiant's assertions — which is all that plaintiff had demonstrated. We decline to consider the court's first conclusion because the record amply supports the second one, insofar as the July 2003 affidavit accurately reflects the affiant's assertions. In short, there is no factual basis to support plaintiff's allegation that defendant purposefully falsified the affidavit.

¶ 7. According to plaintiff, the superior court erred by concluding that there was insufficient evidence of falsification to survive summary judgment because, when the facts are viewed most favorably to plaintiff as the nonmoving party, the affidavit falsely states that (1) Ms. Landry had knowledge that plaintiff had falsified the chart of a particular patient — "Patient A"; and (2) in general, plaintiff coerced patients into unnecessary cataract surgery and then falsified medical records to make it appear that the surgery was necessary and desired. In making these arguments, plaintiff relies primarily on Ms. Landry's testimony at the deposition taken by plaintiff's attorney approximately five months after Ms. Landry signed the affidavit prepared by defendant and two months after she signed the October 2003 affidavit. Like the superior court, we find no material differences between the assertions made in the July 2003 affidavit and those made in either the October 2003 affidavit or, more importantly, Ms. Landry's deposition testimony.

¶ 8. Plaintiff's primary focus is on Patient A. According to plaintiff, the Landry affidavit cannot be reconciled with Ms. Landry's deposition testimony because while the affidavit states that plaintiff purposefully falsified the chart of Patient A to reflect that she wanted cataract surgery when she did not, her deposition testimony acknowledges that she never met or treated Patient A, was not familiar with her vision testing, and had no idea whether she needed or wanted cataract surgery. For several reasons, this argument fails to raise a colorable claim of a falsified affidavit. Patient A is mentioned once towards the end of the affidavit in the following context:

> On [Patient A's] chart I saw where he fudged the Snellen and CST with BAT results. Dr. Chase [indicated] that she wanted cataracts removed when she did not. He also had it noted that he gave a 2nd opinion. That language on the chart is what is on the script given to the techs.

At the deposition, plaintiff's attorney asked Ms. Landry directly if she had told defendant she thought plaintiff had "fudged" the Snellen and CST with BAT results on Patient A's chart. Ms. Landry responded, "Yes."

¶ 9. When plaintiff's attorney asked Ms. Landry whether she told defendant that Dr. Chase indicated Patient A "wanted cataracts removed when she did not," she responded as follows:

> That is what Dr. Chase wrote down even when not talking to the patient, so he would write that down ahead of time. When he said that the patient has cataracts, he'll write down, Patient wants cataract surgery, can't see to drive, or whatever.

Plaintiff's attorney then pressed Ms. Landry on what she knew about Patient A, asking questions such as whether she was in the room when plaintiff diagnosed Patient A or whether she played any role in Patient A's care. Ms. Landry acknowl-

edged that she had not played any part in Patient A's care but reiterated that plaintiff would write in the chart that a patient wanted cataract surgery when the patient had not expressed a desire for surgery. Moreover, when plaintiff's attorney suggested to Ms. Landry that "it's not accurate to say that you told [defendant] Dr. Chase wrote that [Patient A] wanted cataracts removed when she did not," Ms. Landry responded, "I can't honestly answer that."

¶ 10. At most, Ms. Landry's deposition testimony creates some doubt as to what she actually knew about plaintiff's specific conduct with respect to Patient A. The only relevant issue, however, is what Ms. Landry told defendant, not whether the statements she made to defendant were accurate or truthful. Despite pressure from plaintiff's attorney, nothing in Ms. Landry's deposition testimony suggests that she did not tell defendant what the affidavit indicates she told him. Indeed, Ms. Landry's deposition testimony reaffirms that she told defendant that plaintiff fudged the Snellen and CST with BAT results on Patient A's chart. Her testimony also confirms that plaintiff would often indicate that patients wanted cataracts removed when they did not, and she rejected pressure from plaintiff's attorney to acknowledge that she did not tell defendant that plaintiff did so with respect to Patient A. In short, there is no basis in Ms. Landry's deposition testimony upon which to find that defendant purposely falsified Ms. Landry's affidavit with regard to Patient A.

¶ 11. Plaintiff also complains that the affidavit was designed — through the use of words like "crafted," "script," and "spiel," which Ms. Landry had never used — to support the notion that plaintiff would coerce his patients into unnecessary and undesired cataract surgery and then falsify his records to make it appear that the surgery was necessary and wanted. Once again, a comparison of the affidavit with Ms. Landry's deposition testimony does not support this claim. According to the affidavit, Ms. Landry "felt [plaintiff] crafted records to force patients into cataract surgery." The affidavit goes on to explain precisely how plaintiff would have the "tech" record test results to support cataract surgery when none was indicated. The affidavit states that plaintiff has a "script" on an index card taped to a machine and that he uses this for his same "spiel" about cataracts. At Ms. Landry's deposition, plaintiff's attorney asked her: "Did you tell Phil Ciotti that Dr. Chase 'crafted records to force patients into cataract surgery?'" She responded, "No," to saying the quoted phrase, but then went on to testify that she told defendant: (1) she believed "every patient over the age of 35 or 45 was told they had cataracts until the surgical schedule was filled"; (2) for patients in the target group, the "techs" were instructed to record certain test results on post-its rather than in the patients' medical charts; (3) if it turned out that the CST with BAT test results for target group patients were not bad, plaintiff would often ask the "tech" to do another CST with BAT test during the examination while the patient's eyes were dilated, which would skew the test results; (4) she felt plaintiff would note cataracts before he was even in a position to see them in the slit lamp; and (5) test results were placed in patients' charts to make it appear that the patient's vision was worse than it actually was. When asked whether she told defendant that she knew plaintiff "operates unethically," she responded: "I believe so. I don't know. I think so." Read in its entirety, Ms. Landry's deposition testimony was fully consistent not only with the assertion in the affidavit that plaintiff "crafted" records to force patients into unnecessary cataract surgery but also with the details stated in the affidavit of precisely how he would do so.

¶ 12. When asked at her deposition whether she specifically told defendant

that plaintiff would make "a spiel" to cataract patients, Ms. Landry responded: "No. Not my wording." But when asked whether she told defendant that plaintiff "made the same presentation to everybody over the age of 35 who hadn't had prior cataract surgery," she responded: "I believe so." Further, Ms. Landry acknowledged later in the deposition that she said things to defendant that would support use of the word "spiel" in the context in which it was used. Regarding the word "script," although Ms. Landry told plaintiff's attorney that she had not used that word in her interview with defendant, she acknowledged that she told defendant that plaintiff had an index card stating the same things he would say to cataract patients in the target group.

¶ 13. At most, plaintiff has demonstrated only that defendant, in preparing the affidavit for Ms. Landry to sign, used words that Ms. Landry had not used. He has utterly failed to demonstrate, however, that the use of those words misrepresented Ms. Landry's assertions in any meaningful or material way. Ms. Landry asserted her belief that plaintiff practiced unethically by using test results to make it appear that patients in the targeted age group needed and wanted cataract surgery when they did not. Although plaintiff may have put in doubt whether Ms. Landry told defendant more about Patient A than she knew, he has not put in doubt whether Ms. Landry told defendant that plaintiff "fudged" the records with respect to Patient A as with other patients. Ms. Landry's core assertions of misconduct were consistent in her July 2003 affidavit, her October 2003 affidavit submitted for a civil case not involving defendant, and her December 2003 deposition testimony procured by plaintiff's attorney. Hence, no reasonable factfinder could conclude, based on the record before us, that defendant purposefully falsified the Landry affidavit.

¶ 14. As further evidence of defendant's alleged falsification of the affidavit, plain-

tiff points to Ms. Landry's own statements indicating that the affidavit did not accurately reflect what she said. Plaintiff emphasizes that we must consider the facts in a light most favorable to him as the nonmoving party, and that, in any event, he must have an opportunity to depose defendant. We agree with plaintiff that we must consider the record in a light most favorable to him in determining whether the trial court property granted the State summary judgment. See *Doe v. Forrest*, 2004 VT 37, ¶ 9, 176 Vt. 476, 853 A.2d 48 (in determining whether summary judgment is appropriate, "we give the nonmoving party the benefit of all reasonable doubts and inferences"). That does not mean, however, that we must ignore a record amply demonstrating the consistency between the affidavit and deposition testimony merely because the affidavit included certain words that were not used by Ms. Landry or because Ms. Landry expressed concerns over the use of some of those words. As the trial court found, Ms. Landry's deposition testimony suggests that her concerns were more about the impact of her being portrayed in the media as the principal source of the accusations against plaintiff rather than whether the specific words defendant used in the affidavit accurately reflected her assertions against plaintiff.

¶ 15. As for plaintiff's complaint about the need to depose defendant, he has not adequately explained how he was precluded from doing so earlier or how deposing defendant at this juncture would have the potential to uncover any information that might be helpful to him. In determining whether defendant is entitled to qualified immunity, the question is whether an objective person in defendant's situation would have believed that his conduct violated established law. See *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 213, 790 A.2d 408, 419 (2001) ("We use an objective standard when assessing whether a public official's acts

were taken in good faith."); *Sabia v. Neville*, 165 Vt. 515, 521, 687 A.2d 469, 473 (1996) ("Good faith exists where an official's acts did not violate clearly established rights of which the official reasonably should have known."). Defendant's subjective frame of mind at the time he prepared Ms. Landry's affidavit is irrelevant. The affidavit and deposition testimony stand on their own, and no testimony from defendant could alter the consistency of Ms. Landry's assertions in both of them or result in a legal conclusion that defendant's preparation of the affidavit violated established law.

*Affirmed.*