2015 VT 48

# PH West Dover Property, LLC., Mitchell Frankenberg and Jennifer Fredreck v. Lalancette Engineers, Richard and Barbara Lalancette and Barbara Walowit Realty, Inc.

[120 A.3d 1135]

No. 13-157

Present: Dooley, Skoglund, Robinson and Crawford,[1] JJ., and Eaton and Morris (Ret.), Supr. JJ., Specially Assigned

Opinion Filed March 20, 2015

---

[1] Justice Crawford was present for oral argument, but did not participate in this decision. Judge Morris (Ret.) was not present for oral argument, but reviewed the briefs, listened to oral argument, and participated in this decision.

*James A. Valente* of *Costello Valente & Gentry, P.C.*, Brattleboro, for Plaintiffs-Appellants.

*Potter Stewart, Jr.* of *Potter Stewart, Jr. Law Offices, P.C.*, Brattleboro, for Defendant-Appellee Barbara Walowit Realty, Inc.

¶ 1. **Skoglund, J.** Plaintiff buyers in this consumer fraud action appeal from a summary judgment order in favor of defendant realtor who represented the seller in the sale of an inn. Plaintiffs argue that the trial court erred in concluding that defendant's alleged misrepresentation and omission were immaterial as a matter of law. We affirm.

¶ 2. For purposes of our review, we consider the relevant facts in the light most favorable to the nonprevailing party — in this case, plaintiffs. *Chase v. Agency of Human Servs.*, 2011 VT 31,

¶ 14, 189 Vt. 613, 19 A.3d 167 (mem.). Based on the evidence presented in connection with the parties' cross-motions for summary judgment, those facts are as follows. Defendant Barbara Walowit Realty, Inc. was the listing agent for an inn in West Dover.[2] After Ms. Walowit secured the listing for the inn, she contacted a prior-prospective purchaser to renew discussions about a potential sale. The prior-prospective purchaser claims she told defendant during their conversation that she had witnessed flooding in the parking lot and had learned of "major problems with the roof and that there was a possibility of collapse." The prospective purchaser stated in her affidavit that defendant told her that flooding was a common occurrence. There is no evidence that the prior-prospective purchaser provided any information about the specific claimed problems with the roof or a description of any flooding, or any information about the source or basis for her complaints.

¶ 3. Following this exchange, defendant asked the seller, who had himself performed much of the carpentry work at the inn, about the condition of the roof. In her deposition, defendant stated that the seller said he believed the roof to be satisfactory. Again, in her deposition testimony, defendant testified she recommended that the seller "secure[ ] an estimate" because "this issue might be raised in an inspection and he should be prepared to be able to either compensate, fix, or do something." In response, the seller gave defendant a document labeled "Roof Materials List" reflecting the materials cost for shingles, flashing, and nails for 6,600 square feet of roof. The estimated cost of the materials was $5000.

¶ 4. In the meantime, plaintiffs Mitchell Frankenberg and Jennifer Fredreck formed PH West Dover Property, LLC (hereinafter plaintiffs) for the purpose of buying an inn. They contacted defendant, who showed them the property in West Dover. Defendant did not disclose to plaintiffs the substance of her conversation with the prior-prospective purchaser, the $5000 materials estimate for roof repairs, or any concerns about the condition of the roof.

¶ 5. Before entering into a purchase-and-sale agreement with the seller, plaintiffs received a written disclosure from the seller concerning the condition of the property. The "Seller's Property

---

[2] For ease of use in the opinion, we refer to defendant as the individual rather than the company.

Information Report" states "[t]his report is not a warranty of any kind by the seller or by any real estate agent representing the seller. This report is not a substitute for a property inspection." The Report stated that the seller was aware of no "current problems with the roof," and that there was no "flooding, drainage or grading problems on the property." Plaintiffs entered into a purchase-and-sale agreement with the seller in December 2007. The agreement contained an inspection contingency.

¶ 6. At the recommendation of defendant, plaintiffs then hired Lalancette Engineers to perform a prepurchase structural inspection of the property, and received an inspection report in late January 2008. The report included a statement that "[t]he visible portion of the upper roof on the main inn is showing signs of wear and should be kept under observation. Resurfacing of this portion of the roof should be planned for within the next three to five years." Specifically, the report recommended replacement of "torn and missing shingles at a few locations . . . and repair of active roof leaks that were noted in the right attic at the right front plumbing vent and right rear metal chimney."

¶ 7. The sale closed in May 2008. In September 2008, after encountering various problems relating to the condition of the inn, plaintiffs sued defendant for negligence and consumer fraud for defendant's alleged misrepresentations and omissions concerning the condition of the inn.[3] Plaintiffs and defendant filed cross-motions for summary judgment.

¶ 8. On the claim of negligence, the trial court granted summary judgment to defendant. That ruling is not before us on appeal. As to the claim of consumer fraud, the court considered, among other things, defendant's alleged failure to disclose the contents of her conversation with the prior-prospective purchaser and to disclose the estimate of roof repair costs that was in her files. The court concluded that the statements from the prior-prospective purchaser were "simply too vague and foundationless to give rise to knowledge of specific material facts that [defendant] would have a duty to disclose" under the Consumer Fraud Act.[4] The court further concluded that defendant's failure to disclose the roof-

---

[3] Plaintiffs also sued Lalancette Engineers, but those claims are not before us in this appeal.

[4] The Legislature has since amended the statute to substitute the term "consumer protection" for "consumer fraud." See 9 V.S.A. § 2453.

repair estimate was not a material omission because plaintiffs "already knew the roof needed repairs" from the Lalancette report, and disclosure "would have left them in the same position in which the report placed them; needing to make further inquiry." Thus, the court concluded that the estimate "cannot be considered material as a matter of law," and granted judgment to defendant. Plaintiffs appealed.

¶ 9. We review de novo a motion for summary judgment, applying the same standard of review as the trial court. *Madowitz v. Woods at Killington Owners' Ass'n*, 2010 VT 37, ¶ 9, 188 Vt. 197, 6 A.3d 1117. Summary judgment is appropriate only when "the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quotation omitted); see V.R.C.P. 56(a). Therefore, we afford the nonmoving party "the benefit of all reasonable doubts and inferences." *Doe v. Forrest*, 2004 VT 37, ¶ 9, 176 Vt. 476, 853 A.2d 48.

¶ 10. ▪ ▪ We have recognized that "[r]eal estate brokers and agents are marketing agents, not structural engineers or contractors. They have no duty to verify independently representations made by a seller unless they are aware of facts that tend to indicate that such representations are false." *Provost v. Miller*, 144 Vt. 67, 69-70, 473 A.2d 1162, 1164 (1984) (quotation omitted). They can, however, be liable under the consumer protection statute for misrepresenting or omitting facts known to them that are important enough to affect a reasonable buyer's conduct. *Vastano v. Killington Valley Real Estate*, 2007 VT 33, ¶¶ 8-10, 182 Vt. 550, 929 A.2d 720 (mem.); see also 9 V.S.A. § 2453(e) (affirming that consumer protection requirements apply in real estate transactions).

¶ 11. ▪ To establish an unfair or deceptive act pursuant to the consumer protection statute, 9 V.S.A. § 2453(a), plaintiffs must show: (1) a representation, omission, or practice likely to deceive them; (2) that they interpreted the message reasonably under the circumstances; and (3) that the omission was "material, that is, likely to affect [their] conduct or decision." *Vastano*, 2007 VT 33, ¶ 8 (alteration in original) (quotation omitted). The question of whether a misrepresentation or omission is material is "generally measured by an objective standard, premised on what a reasonable person would regard as important in making a decision." *Id.* ¶ 9 (quotation omitted).

¶ 12. ■ ■ We first consider the statements from the prior-prospective purchaser to defendant about the condition of the roof and the flooding. "We have distinguished statements of fact from statements of opinion in the consumer-fraud context, holding that misrepresentations of the former may constitute fraud while misrepresentations of the latter cannot." *Heath v. Palmer*, 2006 VT 125, ¶ 14, 181 Vt. 545, 915 A.2d 1290 (mem.). While the prior-prospective purchaser's statements to defendant do not fall neatly in either category, we agree with the trial court that they were not sufficiently specific to impute knowledge of defects in the property to defendant, nor to require disclosure of material information that might affect a reasonable consumer's conduct or decision.

¶ 13. The prior-prospective purchaser's statements to defendant, given as a reason for declining an earlier opportunity to make a purchase, are second-hand reports — unsupported by evidence or foundation — which are either too unreliable or too vague to require disclosure. To require the realtor to relate every nonspecific and unattributed rumor to subsequent buyers would be unreasonable. The mischief of such a requirement is obvious from this case. Although the roof shingles required replacement, no one with real knowledge about the condition of the inn has claimed that the roof structure was at risk of collapse. The record contains no evidence that the prior-prospective purchaser was qualified to offer a reliable assessment of the roof. The prior-prospective purchaser's statements provided no basis to impose a duty on defendant to investigate.

¶ 14. Similarly, the report of flooding in the parking lot was too vague. Does "flooding" mean that puddles formed when it rained, or does it mean that customers' cars were routinely immersed in deep water? The first condition is too minor to bear repetition; the second — although inherently improbable — would obviously require disclosure. Although we join the trial court in accepting plaintiffs' facts to be true for purposes of summary judgment, neither court may extend and embroider upon the affidavits. We assume that plaintiffs have provided the strongest and most complete evidence available to support the claim of misrepresentation. The claim is limited to a nonspecific complaint of "flooding," which was too vague to require disclosure to other customers.[5]

---

[5] The prior-prospective purchaser's affidavit states that defendant advised her that flooding was a common occurrence. Plaintiffs did not rely upon this statement as

Before the severe consequences of the consumer protection statute fall upon a realtor, the trial court must be satisfied that the information offered by third parties has sufficient reliability and specificity to require that the realtor pass the information along to anyone else who expresses interest in the property. The prior-prospective purchaser's statements — accepted on their face as true — did not meet this standard.

¶ 15. We now consider defendant's failure to disclose the written estimate of roof repair costs to plaintiffs. The trial court awarded summary judgment to defendant on the ground that her omission of the estimate was not material because plaintiffs had independent knowledge of the information. Unlike the statements by the prior-prospective purchaser, this estimate is the type of concrete, specific information that is material and should be disclosed to a potential buyer. The omission of this information, as well as the affirmative representation that seller was aware of "no current problems with the roof" could give rise to a violation of the consumer protection statute. To the extent that the trial court concluded that information subsequently acquired by plaintiffs rendered this representation and omission immaterial, we part ways with the trial court. However, our own analysis leads to the same conclusion as that of the trial court, albeit through a slightly different path. See *In re Cabot Creamery Coop.*, 164 Vt. 26, 29, 663 A.2d 940, 941-42 (1995) (explaining that this Court can affirm on different grounds than relied upon by trial court). In our view, the plaintiffs' case fails for lack of proof on the element of causation and not because the information withheld was immaterial.

¶ 16. As the trial court recognized, plaintiffs received essentially the same information from their own engineer. This information was received within the time allowed for cancellation of the purchase-and-sale agreement. Plaintiffs closed on the transaction knowing that the shingled portion of the roof needed replacement

an independent basis for liability under the consumer protection statute in their memoranda submitted to the trial court or in the briefs filed in this appeal. To the extent that defendant's statement substantiates the prior-prospective purchaser's statements, it adds little to the summary judgment analysis because we accept as true plaintiffs' claim that the prior-prospective purchaser made the statements described in her affidavit. See *Forrest*, 2004 VT 37, ¶ 9 (explaining that nonmoving party is entitled to benefit of all reasonable doubts and inferences on review of motion for summary judgment).

within a few years and that roof leaks around a chimney required immediate attention.

¶ 17. [6] Courts in other jurisdictions have consistently held that a buyer of real estate who has independent knowledge of material information that the realtor fails to disclose cannot recover under applicable consumer protection statutes because the omission did not cause the buyer's injury. See *Graham v. Muldoon*, No. L-2240-07, 2010 WL 4940041, at *2-3 (N.J. Super. Ct. App. Div. Dec. 7, 2010) (unpub.) (holding that buyer of refurbished house could not show that sellers' marketing statements caused buyer's damages resulting from backup of antiquated sewer system where buyer admitted that he was aware prior to closing that sewer was not newly constructed); *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 312-13 (Tex. App. 1993) (holding that, because buyer knew of problems with foundation of house prior to closing, realtor's misrepresentations that cracks in foundation were insignificant were not "producing cause" of his injury); *Dubow v. Dragon*, 746 S.W.2d 857, 860-61 (Tex. App. 1988) (holding that buyers of house with faulty foundation could not recover against sellers under consumer protection act where buyers hired inspector who informed them of foundation problems prior to closing and buyers decided to go ahead with purchase anyway).

¶ 18. Courts have reached similar conclusions with regard to transactions not involving real estate. In *Lord v. Commercial Union Insurance Co.*, 801 N.E.2d 303 (Mass. App. Ct. 2004), the trial court found that the plaintiff's automobile insurer committed a deceptive act by failing to send him timely notice of the suspension of his coverage. It ruled, however, that because the plaintiff had independent knowledge of the cancellation, the lack of required notice from the insurer was not a cause of his loss. Despite this ruling, it awarded the plaintiff nominal damages and attorney's fees. The Massachusetts Appeals Court reversed the damages award because damages were not available "absent a finding of at least some causation of injury." *Id.* at 314.

¶ 19. Although *Lord* was later overruled on other grounds by the Massachusetts Supreme Judicial Court, the high court agreed with *Lord*'s observation that the legislature did not intend for plaintiffs to recover under the consumer protection act for deceptive acts that did not cause injury. See *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 491 (Mass. 2004) ("[This proposition]

states nothing more than what our own decisions have made perfectly clear — causation is a required element of a successful [consumer protection] claim."). The requirement of causation is the general rule in cases where consumers have independent knowledge of false statements and omissions. See, e.g., *Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 861-62 (Ill. 1998) (holding that plaintiff could not recover from AT&T for consumer fraud where he knew that he would be charged for calling "900" numbers because AT&T's allegedly deceptive acts did not proximately cause his damage); *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 512 (Md. Ct. Spec. App. 1999) (holding that car dealer was not liable for consumer fraud for checking box indicating that car sold to buyer was "new," where buyer knew that car was demonstration model with 6100 miles on it prior to consummating the transaction, because buyer could not prove that the representation caused him any injury or loss).

¶ 20. ▮ ▮ We follow these decisions in holding that a buyer may not recover under Vermont's consumer protection statute for omission of information by the seller or his agent when, as in the circumstances of this case, the buyer has independent knowledge of the same information prior to the completion of the sale. Vermont's consumer protection statute provides a private cause of action for a consumer "who contracts for goods or services in reliance upon false or fraudulent representations or practices . . . or who sustains damages or injury *as a result of* [such] representations or practices." 9 V.S.A. § 2461(b) (emphasis added). Because the record is undisputed that the information about the need to replace the roof was known to plaintiffs, we agree with the trial court that defendant's failure to provide the seller's estimate of repair costs to plaintiffs cannot satisfy the requirements for liability under the consumer protection act.

*Affirmed.*

¶ 21. **Dooley, J.,** dissenting. One of the most important requirements for a case to be decided on summary judgment is that no material issue of fact exists after we draw all inferences from the information in the record in favor of the nonmoving party. See *Collins v. Thomas*, 2007 VT 92, ¶ 6, 182 Vt. 250, 938 A.2d 1208 ("We review an award of summary judgment de novo, construing all doubts and inferences in favor of the nonmoving party."); see also *Chase v. Agency of Human Servs.*, 2011 VT 31, ¶ 14, 189 Vt.

613, 19 A.3d 167 (mem.) (stating that for purposes of review on summary judgment, we consider relevant facts in light most favorable to nonmoving party). In upholding the trial court's grant of summary judgment to the defendant realtor, the majority purports to honor this requirement, but does not actually do so. In my view, doing so would compel us to reverse the trial court's decision and allow a jury to determine whether defendant's statements or omissions were misleading and caused plaintiffs to sustain damages. Accordingly, I respectfully dissent.

¶ 22. In emphasizing my point of disagreement, I also emphasize that I concur with the majority's statement of the settled substantive law underlying this case. A seller's real estate agent has "no duty to verify independently representations made by a seller unless [the agent is] aware of facts that tend to indicate that such representations are false." *Provost v. Miller*, 144 Vt. 67, 70, 473 A.2d 1162, 1164 (1984) (quotation omitted). An agent may be liable under the consumer protection act (CPA),[6] however, for misrepresenting or omitting facts known to the agent and important enough to affect a reasonable buyer's conduct. See *Vastano v. Killington Valley Real Estate*, 2007 VT 33, ¶ 8, 182 Vt. 550, 929 A.2d 720 (mem.) (stating that plaintiffs claiming unfair or deceptive act under CPA must show that: (1) there was representation or omission likely to mislead them; (2) plaintiffs "interpreted the message reasonably under the circumstances"; and (3) misleading misrepresentation or omission was "material, that is, likely to affect [their] conduct or decision with regard to" transaction that was subject of misrepresentation or omission (alteration in original) (quotation omitted)); see also *Carter v. Gugliuzzi*, 168 Vt. 48, 57, 716 A.2d 17, 24 (1998) (finding omission material where "it plainly could have affected the parties' negotiations or the purchase price"). Here, the facts proffered by plaintiffs were sufficient for a reasonable jury to determine that defendant omitted, or knowingly allowed the seller to misrepresent, information that could have impacted plaintiffs' decision whether to purchase the subject property and, if so, at what price.

¶ 23. As the majority points out, in determining whether defendant possessed information contrary to what the seller dis-

---

[6] As the majority points out, in 2012, the Legislature substituted the term "consumer protection" for the term "consumer fraud" in the statutory sections contained in chapter 63 of Title 9 of the·Vermont Annotated Statutes. 2011, No. 136 (Adj. Sess.), § 1a.

closed to plaintiffs, the parties and the court focused on statements that a prior-prospective purchaser made to defendant and a roof estimate produced by the seller at defendant's suggestion following her conversation with the prior-prospective purchaser. Based on information submitted in the record, plaintiffs made three claims that defendant's nondisclosure, and participation in wrongful nondisclosure by the seller, injured them. Plaintiffs claimed defendant failed to disclose that: (1) she had been told that there was flooding and mold in the basement and flooding in the parking lot; (2) she had been told that there were structural deficiencies in the roof support system such that there was a threat of roof collapse; and (3) the seller estimated that 6600 square feet of the roof would need resurfacing at a materials cost of $5000.

¶ 24. In response, the majority concludes that the prior-prospective purchaser's statements were not sufficiently specific either to impute to defendant knowledge of defects in the property or to require disclosure of the statements as material information that might affect a reasonable consumer's conduct or decision. According to the majority, the statements were "second-hand reports" too vague and unreliable to require disclosure. *Ante*, ¶ 13. The majority further concludes that any wrongful nondisclosure with respect to the need for replacing shingles on the roof was harmless because plaintiffs knew from the report of their home inspector that the replacement of shingles was needed. These responses should not prevail if we properly apply the requirements for summary judgment.

¶ 25. I start with the claim of flooding and mold because it most clearly demonstrates why I believe the majority has erred. This claim is based on the affidavit of the prior-prospective purchaser, which states that: (1) she visited the subject property between July and November 2007 — only a few months before plaintiffs signed a purchase-and-sale agreement on the property — at which time she "learned of major problems with the roof and that there was a possibility of collapse"; (2) during her visit, she "witnessed flooding and mold in the basement" and "witnessed flooding in the parking lot"; (3) after her visit, she indicated that she was no longer interested in purchasing the property because of the problems and the seller's refusal to fix them; (4) after obtaining the listing for the subject property, defendant contacted her to attempt to renew discussions about purchasing the property; (5)

she told defendant at that time "about the problems with the building (including specifically that the roof threatened to collapse)"; (6) she advised defendant "about flooding in the parking lot" but defendant responded that "flooding was a common occurrence"; and (7) she told defendant that she was not interested in purchasing the property "due to [its] structural problems." It is important to understand that these statements were made by an apparently disinterested person who was investigating whether to make a $1.2 million real estate purchase but who ultimately decided not to because of deficiencies in the building and surrounding property.

¶ 26. The majority rejects the sufficiency of the affidavit with respect to the flooding and mold because the prior-prospective purchaser's statements do not fall "neatly" and exclusively within the category of "facts," as opposed to opinions; were "not sufficiently specific to impute knowledge of defects in the property to defendant"; were "second-hand reports — unsupported by evidence or foundation" and "too unreliable or too vague to require disclosure"; were "nonspecific and unattributed rumor"; and could mean anything as innocuous as "puddles formed when it rained." *Ante*, ¶¶ 12-14. If we fairly apply the requirement that we draw all inferences from the information in the record in favor of the nonmoving party, the majority's reasons are inadequate.

¶ 27. Before I get to the inference rule, however, I emphasize that the statements in the affidavit were ones of fact and not opinion — "I witnessed flooding and mold in the basement" and "I witnessed flooding in the parking lot." While more detail is always desirable, I fail to see how a first-hand observation of flooding or mold is not sufficiently specific or too vague. The statements in the affidavit with respect to flooding and mold are not "second-hand reports" and are not based on "rumor."

¶ 28. But the most significant deficiency in the majority's reasoning is ·its failure to apply the requirement that inferences from the facts in the record be drawn in favor of plaintiffs, as the nonmoving party, and not defendant. The majority's failure to implement the rule is best demonstrated by its reasoning that flooding in the parking lot could mean "puddles formed when it rained" and that, because of that possible interpretation, the statement was too vague to hold that defendant should have acted upon it. It is not credible that a person who is considering whether to spend $1.2 million to buy an inn would be put off by

puddles in the parking lot. I doubt if the word flooding has ever been used to describe puddles after a rain, but in this case the word was used in the context of a discussion in which the prior-prospective purchaser was explaining to the real estate agent why she was not interested in purchasing the property. A reasonable jury could certainly infer that she was speaking of significant water issues on the property.

¶ 29. Even if I thought that the majority's characterization was credible, the majority is relying on an inference from the affidavit, an inference that requires looking at the factual statement in the light *least* favorable to plaintiffs. Whether one draws the inference against the nonmoving party, or holds that because one can draw an inference against the nonmoving party the statement is vague, the result is the same and we are failing to honor the requirement that we draw inferences in favor of the nonmoving party.

¶ 30. The proper inferences to draw here are that the flooding in the basement and parking area and the mold in the basement were such serious deficiencies in the property that they caused a prospective purchaser not to purchase the property, and that if plaintiffs had known of statements regarding such deficiencies, they may not have purchased the property or may have negotiated a lower price. Surely, any prospective purchaser would want to know if there was any kind of "flooding" in the basement or elsewhere on the property. Indeed, that is why one of the standard questions on the disclosure form prepared by the seller asks if there is "any flooding" problems on the property.

¶ 31. If a jury credited plaintiffs' case on this issue, they could have found that defendant was liable for not disclosing the information she obtained from the prior-prospective purchaser and for transmitting the representation from the seller that there was no "flooding, drainage or grading problems on the property." Thus, the affidavit from the prior-prospective purchaser satisfies our well-established summary judgment standard. Summary judgment is appropriate only when "the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Madowitz v. Woods at Killington Owners' Ass'n*, 2010 VT 37, ¶ 9, 188 Vt. 197, 6 A.3d 1117 (quotation omitted); see V.R.C.P. 56(a). If the evidence presented on a motion for summary judgment is subject to conflicting interpretations, or reasonable people might disagree as to its significance, "summary judgment is improper." 10A C.

Wright et al., Federal Practice and Procedure § 2725, at 433-37 (1998) (citing federal and state cases). In my judgment, the majority has failed to apply this standard.

¶ 32. This brings me to the second claim — that defendant should have disclosed the statement from the prior-prospective purchaser that the building had a structural deficiency such that there was a possibility that the roof would collapse. The affidavit stated that the prospective purchaser learned of this deficiency when she visited the building and that the seller refused to fix the deficiencies. She specifically identified the collapse risk as a fact that she related to defendant. I recognize that imposing a duty to disclose the potential roof collapse runs into some of the majority's arguments detailed above and makes the issue a closer call. The prior-prospective purchaser never claimed that she saw the structural deficiency so it is likely that the information was second-hand. The prior-prospective purchaser did say, however, that she learned of the structural defect during a visit to the inn, so it is a reasonable inference that the information came from someone who knew specifically about the roof structure. While the question is closer, I believe that if we draw reasonable inferences from the facts in the record, there is enough information in the record to reserve for the jury the question of whether defendant should have disclosed this information.

¶ 33. I cannot accept the majority's specific objections to requiring defendant to disclose the collapse threat. The majority reasons as follows: nothing in the record suggests that the prior-prospective purchaser was qualified to assess the condition of the roof and no one "with real knowledge about the condition of the inn has claimed that the roof structure was at risk of collapse." *Ante*, ¶ 13. I agree that it is not a reasonable inference that the prospective purchaser is an expert in roof structures, but it is a reasonable inference that she learned of the threat of roof collapse during her visit from someone who could make that judgment.

¶ 34. As to the second objection, the record contains evidence that shortly after plaintiffs purchased the property they had to rectify significant structural problems with the roof. The exhibits in this case include reports prepared in July 2008 — a mere two months after plaintiffs closed on the property — by an engineering firm and another home inspection company detailing the multiple serious structural problems with the roof that required

immediate attention. The reports, among other things, recommended remedying a failed roof support system to avoid serious injury and financial loss. In a July 2011 affidavit, plaintiffs indicated that they had already incurred significant expenses addressing problems with the roof and had received an estimate of $120,000 from a construction firm to fully remedy the problem.

¶ 35. I recognize that the July 2008 reports had not been done at the time of the conversation between defendant and the prior-prospective purchaser. But this evidence in the record undercuts the majority's suggestion that the prior-prospective purchaser's statements regarding serious problems with the roof were vague and unreliable. Again, they were made in the context of a person who was explaining why she ultimately decided not to purchase a property in which she had a genuine interest. A reasonable jury could have concluded that defendant withheld from plaintiffs information regarding the condition of the roof that she knew to be contrary to what the seller was claiming in his disclosure statement — that he did not know of any current problems with the roof.

¶ 36. The third claim with respect to defendant's responsibility, and the second one involving the roof, is that defendant should have disclosed the written estimate[7] of roof repair that defendant suggested the seller obtain following her conversation with the prior-prospective purchaser. This evidence concerns the condition of the roof's covering rather than the soundness of its structure. The majority acknowledges that this estimate was material and the type of concrete, specific information that should have been disclosed to plaintiffs, and further that its omission could give rise to a violation of the CPA. The majority concludes, however, that plaintiffs' claims fail with respect to this information because, as a matter of law, plaintiffs cannot prove causation. According to the majority, plaintiffs had independent knowledge of the same material information within the time allowed for cancellation of the

---

[7] Defendant suggests that the order of events is unclear from the record, and that there is no evidence that defendant was actually aware of the estimate and failed to disclose it. Defendant testified that the seller prepared the estimate and gave it to her, that the document was in her file, that the purpose of the estimate was to help the seller negotiate in the event that plaintiffs or their inspector raised an issue about the roof, and that defendant never disclosed the estimate to plaintiffs. Although defendant testified that she did not recall when the seller gave her the estimate, a jury could infer from this evidence that defendant knew about and failed to disclose the need for repairs to the roof.

purchase-and-sale agreement. In the majority's view, defendant's failure to disclose this information cannot result in liability under the CPA because "the record is undisputed that the information about the need to replace the roof was known to plaintiffs." *Ante*, ¶ 20.

¶ 37. The deficiency in this analysis is that its premise is incorrect — the information was not the same. Indeed, there is nothing in the record indicating that plaintiffs knew that the roof surface was in need of replacement in the immediate future. Rather, the trial court concluded that plaintiffs knew from their own inspection report that the roof needed repairs and that they relied upon that report.

¶ 38. The inspection report produced by plaintiffs' home inspector after they signed the purchase-and-sale agreement did not cover all the same ground or include the same content as the information allegedly omitted or misrepresented by defendant. The inspection was based on a visual assessment, and the report expressly disclaimed responsibility for conditions that could not be seen due to partial snow cover. The summary at the beginning of the report stated that the roof was "showing signs of wear and in need of some repair," but the section of the report dedicated to the roof stated that the "roofing is in good to fair condition." The report noted active leaks at two discrete areas near a plumbing vent and one of the chimneys and stated that resurfacing of the upper roof should be planned for within the next three-to-five years because the roof was showing signs of wear. The report stated that minor leakage should be expected from time to time for any roof, regardless of its age, and that repairing such leaks is easily accomplished. The only immediate action recommended, aside from remedying the two minor leaks, was replacing "torn and missing shingles at a few locations on the upper roof."

¶ 39. In sharp contrast, the estimate produced by the seller was for a huge area of the roof — 6600 square feet — presumably the entire roof apart from the rubberized portion. The $5000 estimate included only the cost of materials to repair the roof, not the total repair costs. Plaintiffs proffered an affidavit from a carpenter and roofer estimating a total cost of approximately $19,000 to replace 6600 square feet of roof with the materials listed in the seller's estimate.

¶ 40. Again, the question before us involves inferences from information in the record. I recognize that one possible interpre-

tation of the estimate is that it was purely hypothetical: *if* the roof needed to be replaced for some reason, this is how much the materials would cost. Under this view, the estimate would not convey any information to defendant about the state of the roof or the need for repairs, so it would not support plaintiffs' claim that defendant knowingly participated in a material misrepresentation concerning the state of the roof. As with the inferences about the flooding and mold, however, this inference should not be drawn in favor of the nonmoving party. Rather, the inference we must apply is that the calculation of the cost of materials to replace 6600 square feet of roofing reflected a conclusion by the seller — a carpenter who had been deeply involved in work on the inn — that 6600 square feet of roof needed to be replaced.

¶ 41. Based on this inference, a reasonable jury could conclude that this fact would have been more alarming to buyers than knowledge of torn and missing shingles at a few locations and of the need for long-term observation of the upper roof. And a reasonable jury could conclude that a buyer with knowledge of the estimate might not purchase the property or might be willing to pay commensurately less for the property on account of the disrepair. Indeed, this conclusion is supported by defendant's deposition testimony that the condition of a roof is a material fact, and that she urged the seller to get an estimate because if the issue of the roof came up in negotiating a contract, he should be prepared to "compensate, fix, or do something."

¶ 42. It is also supported by the affidavit of plaintiff Frankenberg, which stated that he and his wife relied on the representations in the seller's disclosure in deciding to contract to purchase the inn. He further stated that had defendant informed him that the roof was in need of repair, and had she provided the materials estimate, he would have had his own roofing expert provide him a full repair estimate, would have negotiated a sale price with the seller based on the estimate or given up interest in the inn altogether, and would have further investigated the condition of the roof and the attic. This testimony directly contradicts the inference inherent in the majority's position.

¶ 43. The majority's position also fails to recognize inferences that a jury could draw from the temporal relationship among the events occurring in this case. Plaintiffs did not have an inspection done until *after* the parties entered into a purchase-and-sale agreement. On the other hand, defendant forwarded the disclosure

statement indicating that there were no known current problems with the roof *before* the parties signed an agreement.[8] Although plaintiffs arguably could have sought to renegotiate the agreement pursuant to the inspection contingency in their contract as a result of their inspector's report, by that time they stood in a materially different position — they had paid a $10,000 deposit and had signed a contract at a set contract price — than they were in at the time of the alleged misrepresentations or omissions. Given plaintiffs' insistence on a disclosure statement from the seller before they signed a purchase-and-sale agreement, and plaintiff Frankenberg's statement concerning the steps he would have taken in the absence of the alleged misrepresentations, we should not conclude as a matter of law that disclosure of the roof surface problems before the parties signed the purchase agreement would not have affected plaintiffs' conduct.

¶ 44. In short, a jury could reasonably conclude that plaintiffs' response to the report provided by their inspector, in the face of a representation that there were no known problems with the roof, was very different from the response plaintiffs would have had if they had learned that the seller concluded that 6600 square feet of roof needed replacement.[9] Plaintiffs' access to and receipt of information from their home inspection report or other sources, and their failure to act thereon, may well affect a jury's assessment of damages arising from any misrepresentation or omission, but that fact does not support the majority's ruling that there was no causation as a matter of law. See *Kriz v. Schum*, 549 N.E.2d 1155, 1159 (N.Y. 1989) (stating that legal causation is determination left to jury unless "only one conclusion may be drawn from the established facts" (quotation omitted)).

---

[8] While defendant signed the disclosure statement only to indicate that she had delivered a copy to the potential buyers, a jury could find that she provided the statement to plaintiffs despite being aware of information indicating that the statement was inaccurate.

[9] I recognize that plaintiffs also sued their original home inspector based on claims that the inspection was negligent and that the inspector should have discovered problems with the roof. Thus, one could argue that a competent home inspection report, such as the one obtained by plaintiffs after they bought the property, would have made plaintiffs aware of any structural or other problems with the roof that required immediate attention. But defendant has not, and cannot, claim a lack of causation based upon an apparently incomplete home inspection done by the home inspector she recommended to plaintiffs. Indeed, it is the majority, not defendant or the trial court, that is relying upon lack of causation to support a grant of summary judgment in favor of defendant.

¶ 45. I would reverse the trial court's summary judgment decision and hold that each of plaintiffs' three claims against defendant is sufficiently supported in the record to compel us to conclude that issues of material fact remain in dispute. Accordingly, I dissent from the majority's decision not to do so.

¶ 46. I am authorized to state that Justice Robinson joins in this dissent.