305 So.2d 42 (1974)
INDUSTRIAL WASTE SERVICE, INC., et al., Appellants,
v.
Ada HENDERSON, Appellee.
No. 73-1412.
District Court of Appeal of Florida, Third District.
December 10, 1974.
Rehearing Denied January 10, 1975.
Adams, George, Wood, Lee, Schulte & Thompson, Jeanne Heyward, Miami, for appellants.
*43 Fromberg, Fromberg & Roth and Jeffrey Michael Cohen, Miami, for appellee.
Before BARKDULL, C.J., and PEARSON and HENDRY, JJ.
PER CURIAM.
Appellants, defendants in the trial court, seek review of an adverse final judgment entered pursuant to a jury verdict of $95,000 in favor of the plaintiff-appellee.
This action was commenced upon a complaint by the plaintiff seeking damages for the wrongful death of her husband, James Henderson, who was killed on the morning of July 31, 1971 at the Miami Drive-In Theater, where he was employed.
The testimony at trial revealed that Henderson was cleaning up in the concession area at the theater on the morning of his death. A garbage truck owned by the appellant, Industrial Waste Service, Inc., arrived to pick up waste. The truck was driven by Henderson's nephew, appellant Jimmie Lee Warren, and seated in the passenger side of the vehicle was a helper and Henderson's friend, appellant Bobby C. Gardner.
When the truck reached an entrance gate to the theater, the gate was closed and Warren honked the horn. Henderson, along with one of his children went to the gate to open it.
The evidence further shows that as the garbage truck began to move, Henderson jumped onto the running board of the passenger side where Gardner was seated. It was a rainy morning, and there was testimony that the running board was slippery because the paint had worn away and the surface was wet and greasy. Also, Henderson was not wearing any shoes.
Henderson and Gardner began engaging in horseplay as the truck was in motion. Warren made no attempt to stop the truck. (He testified that the vehicle was proceeding at ten to fifteen m.p.h.) Gardner stated that at one point it appeared Henderson was slipping, but he regained his footing, and kept up the horseplay.
Just before Henderson actually fell, Gardner said he reached in the truck to grab him. Gardner ducked, and Henderson started falling back. Gardner testified that he reached out and grabbed Henderson's arm, but in Gardner's words, "[H]e [Henderson] just turned loose my hand, man... ."
There is some conflict in the evidence. For instance, in a pre-trial affidavit, which was introduced into evidence at trial, Warren stated that he noticed Gardner was "playing around with James Henderson and trying to push him off the running board." Further, Warren stated, "I then saw Bobby Gardner start to roll up the window in an attempt to dislodge James Henderson's hands."
At trial, however, Warren said the affidavit was taken by the appellee's attorney in the latter's office, and he strongly denied making the statements attributed to him.
Nevertheless, it is not disputed that Henderson did fall from the truck and the right rear tandem wheels passed over his body. Apparently, his body became lodged between two of the tires, and a police officer testified that he was dragged approximately thirty feet before the garbage truck came to a rest.
There was also testimony at the trial that Henderson had been drinking. A doctor, specializing in pathology, who had examined the autopsy report on Henderson, stated that the victim had an alcohol reading of .19% which is the equivalent of ten drinks of whiskey.
The appellants now raise five points on appeal as grounds for reversing the jury verdict and the judgment entered by the court at the conclusion of all the evidence.
The first four points we have considered together. Essentially, appellants argue that the court erred by denying motions for a directed verdict and a motion for a new *44 trial because the proof demonstrated that it was Henderson's negligence which was the sole proximate cause of the accident.
In addition, appellants assert that the verdict was excessive because it is clear the jury did not apply the doctrine of comparative negligence in reaching its verdict. As a basis for this latter contention, appellants point to a question which the jury posed to the trial judge after it had begun its deliberation.
The jury was given a special verdict consisting of four questions prior to retiring. The first sought the jury's findings with respect to the alleged negligence of Gardner and Warren. The second asked whether or not Henderson was negligent. The third requested the jury to ascribe the percentage of negligence attributable to Henderson, Gardner and Warren, assuming the jury found all three negligent. Finally, the fourth question sought the damages which the jury found were sustained by Mrs. Henderson.
The question asked by the jury was: "If we find the decedent in any percentage guilty of causing the accident, does the percentage have any affect on the ultimate settlement that we decide to give the widow?"
The court's answer in essence was that each question should be answered independently and without reference to any other question. The jury then retired once again and subsequently returned a verdict finding Warren and Gardner were negligent and Henderson was not, and awarding a $95,000 verdict.
Appellants submit that the jury's verdict was influenced by prejudice (manifested by the appellee's counsel's repeated reference to the appellants' counsel as the "insurance company's lawyer" forming the basis of point five on appeal) and by sympathy because the appellee was left with seven children to support, six of whom were seated in the courtroom during the proceedings.
We respond to this latter contention in the same language employed by our sister court, the Second District Court of Appeal, in Bowser v. Harder, Fla.App. 1957, 98 So.2d 752, 756:
"Trial lawyers are often confused by a jury's determination of the issues in a case. Sympathy often is a controlling or participating factor in their conclusions. When a verdict has been returned, however, it is clothed with a presumption of regularity which the appellate court cannot disturb if there was evidence from which a jury could properly have rendered the verdict which it did."
As the reviewing court, we are aware of the rule that motions for a directed verdict are viewed in a light most favorable to the non-movant and on a motion for a new trial, the court will not set aside a verdict, unless it is manifestly against the weight of the evidence. Bittson v. Steinman, Fla.App. 1968, 210 So.2d 30; Katz v. Harrington, Fla.App. 1969, 226 So.2d 11; Nunberg v. Brodsky, Fla.App. 1969, 224 So.2d 727. The trial court in the cause sub judice denied all post trial motions made by the appellants.
It also is not the function of this court to substitute its judgment for the jury's determination in a case of this nature. Byers v. Gunn, Fla. 1955, 81 So.2d 723; Causeway Marina, Inc. v. Mandel, Fla.App. 1973, 276 So.2d 71.
We find from the record that the trial court carefully instructed the jury with respect to the alleged negligence of Henderson, Gardner and Warren. The court went further by submitting a special verdict so that the jury might specifically consider the negligence of all three men.
The question propounded by the jury to the court certainly indicates that the jury, pursuant to the court's instruction, was considering the issue of Henderson's negligence.
However, from the evidence we do not think that the jury was precluded from *45 determining as a matter of fact that the victim had placed himself in a dangerous situation, that Gardner and Warren clearly could see it and should have, as reasonable men, appreciated the danger and acted in a prudent manner to remove the danger by stopping the truck and ceasing the horseplay. See, Byers v. Gunn, supra, Cf., Padilla v. Rodriguez, Fla.App. 1972, 262 So.2d 8.
We also have considered the appellants' fifth point contending that they are entitled to a new trial due to the repeated reference by the attorney for the appellee to appellants' counsel as "the insurance company lawyer."
It is our conclusion that this point lacks substantial merit. See, Metropolitan Dade County v. Dillon, Fla.App. 1974, 305 So.2d 36.
Therefore, for the reasons stated and upon the authority cited, the judgment appealed is affirmed.
Affirmed.
BARKDULL, C.J., participated in decision but not oral argument.