938 A.2d 1208 (2007)
2007 VT 92
Sally A. COLLINS, Administratrix of the Estate of David Collins and Individually, Chuck Collins and Amanda Collins
v.
Nathan THOMAS and Bradford Garland.
No. 05-536.
Supreme Court of Vermont.
August 24, 2007.
*1209 John P. Wesley, J.
Jesse M. Corum, IV of Gale, Corum, Mabie, Cook & Prodan, Brattleboro, for Plaintiffs-Appellants.
Robin Ober Cooley of Pierson Wadhams Quinn Yates & Coffrin, Burlington, for Defendant-Appellee Garland.
Present: REIBER, C.J., DOOLEY, JOHNSON and SKOGLUND, JJ., and DAVENPORT, Supr. J., Specially Assigned.
DOOLEY, J.
¶ 1. This is a wrongful death action on behalf of David Collins, who died tragically at age twenty after falling from the back of a pickup truck driven by his friend, defendant Bradford Garland. Plaintiffs, the estate of Collins, his parents, and sister, appeal an order of the superior court finding defendant not liable as a matter of law and granting him summary judgment. Plaintiffs contend that: (1) but for defendant's negligence in driving an uninspected, defective vehicle, the accident would not have occurred, and, alternatively, (2) defendant failed to exercise reasonable care given Collins' intoxication and, but for defendant's conduct, Collins would not have fallen to his death. We affirm.
¶ 2. The undisputed facts are as follows.[1] On a late summer evening in 2001, Collins *1210 attended a party outside of the home of his friend, Nathan Thomas. At the party were Thomas and his girlfriend, defendant and his girlfriend Daisy Bills, and Harold Smith.[2] Collins and Thomas were drinking; defendant and Bills were not. After a few hours, Collins and Thomas planned to leave on their motorcycles in search of another party. Defendant offered to drive Collins and Thomas, who were, according to plaintiffs, "noticeably intoxicated." Defendant's car was too small to accommodate everyone, and so several members of the group rode in Thomas' pickup truck. While defendant drove, Bills rode in the passenger seat of the cab, and Collins, Thomas, and Smith rode unrestrained in the bed of the truck.
¶ 3. Defendant drove at an appropriate speed, and there was no evidence that he swerved or made any other unusual or erratic maneuvers during the ill-fated trip. At one point, Thomas passed an unlit cigarette to defendant, asking defendant to light it for him. It is unclear whether Thomas passed the cigarette though the sliding window in the back of the cab or through the driver-side window. Collins then passed an unlit cigarette to Bills. According to plaintiffs, Collins stood up, kneeled on the toolbox in the truck bed, and leaned over the edge of the truck with one hand on the roof and one hand extended through the passenger-side window. Collins shouted for Bills to light his cigarette and, according to Bills, she was not able to immediately retrieve the lighter from defendant, prompting Collins to again shout into the window for his cigarette. Thomas stated in his deposition that he told Collins to "get down" from the toolbox, but Collins replied that he had grown up sitting on the toolbox in the back of his father's truck and that Thomas should not worry. Almost immediately thereafter, Collins lost his balance and fell under the truck's rear passenger-side tire. Thomas yelled and banged on the roof to alert defendant, who stopped the truck and ran to where his friend had fallen. It is not clear Collins ever regained consciousness after the fall; he died in the hospital hours later.
¶ 4. Further, for purposes of summary judgment, defendant does not dispute the fact that the truck was in poor repair and not legally inspected at the time of the incident. Specifically, it had only an expired New Hampshire inspection sticker and would not have passed inspection in Vermont due to insufficient tread on the tires, a defective front light, a crack in the windshield, a broken rear right shock absorber, and a faulty rear right brake cylinder.
¶ 5. Plaintiffs brought suit claiming defendant was negligent in driving the defective, uninspected truck, and that he was negligent in allowing Collins, whom he knew to be intoxicated, to move about the bed of the truck as he did. The trial court granted defendant's motion for summary judgment, concluding that, as a matter of law, there was no causal connection between the truck's defects and Collins' death. The court further agreed with defendant that "there is no common-law duty on the part of a sober driver to protect an intoxicated passenger from the consequences of the intoxicated passenger's own actions, and that the imposition of such a duty would be inconsistent with the social *1211 policy favoring the use of designated drivers." Plaintiffs appealed.
¶ 6. We review an award of summary judgment de novo, construing all doubts and inferences in favor of the nonmoving party. In re Mayo Health Care, Inc., 2003 VT 69, ¶ 3, 175 Vt. 605, 830 A.2d 129 (mem.). The inquiry is familiar: whether there are any genuine issues of material fact and whether, in their absence, either party deserves judgment as a matter of law. Id.; V.R.C.P. 56(c)(3). We conclude summary judgment was proper in this case and address each of plaintiffs' arguments to the contrary in turn.
¶ 7. First, we consider defendant's liability for Collins' death because of driving a defective, uninspected truck. This claim suffers from an elemental flawlack of proximate causation. To be sure, the police report cites the various deficiencies of the truck described above. Thus, plaintiffs make much of the fact that defendant drove the truck in violation of 23 V.S.A. § 1222, which prohibits the operation of a motor vehicle without a valid inspection sticker. While not claiming negligence per se, plaintiffs contend that defendant's violation of § 1222 creates a rebuttable presumption of his negligence. See, e.g., Dalmer v. State, 174 Vt. 157, 164, 811 A.2d 1214, 1221 (2002) (rejecting notion that violation of a safety statute is negligence per se); Bacon v. Lascelles, 165 Vt. 214, 222, 678 A.2d 902, 907 (1996) (explaining that proof of violation of a safety statute creates a prima facie case of negligence which is only a rebuttable presumption).
¶ 8. Liability for negligence, however, requires not only a breach of a duty of care but also evidence that defendant's unreasonable conduct caused the plaintiff's harm. See, e.g., Rivers v. State, 133 Vt. 11, 13, 328 A.2d 398, 399 (1974). Specifically, causation requires both "but-for" and proximate causation. See Wilkins v. Lamoille County Mental Health Servs., Inc., 2005 VT 121, ¶¶ 13-14, 179 Vt. 107, 889 A.2d 245. Thus, the plaintiff must first show that the harm would not have occurred "but for" the defendant's conduct such that the "tortious conduct [was] a necessary condition for the occurrence of the plaintiff's harm." Id. ¶ 13. The plaintiff must also show that the defendant's negligence was "legally sufficient to result in liability," Black's Law Dictionary 234 (8th ed.2004) (defining proximate cause), such that "liability attaches for all the injurious consequences that flow [from the defendant's negligence] until diverted by the intervention of some efficient cause that makes the injury its own." Beatty v. Dunn, 103 Vt. 340, 343, 154 A. 770, 771 (1931) (quotations and citation omitted); see also Estate of Sumner v. Dep't of Soc. & Rehab. Servs., 162 Vt. 628, 629, 649 A.2d 1034, 1036 (1994) (mem.) ("Proximate cause is the law's method of keeping the scope of liability for a defendant's negligence from extending by ever-expanding causal links."). Although proximate cause "ordinarily" is characterized as "a jury issue," it may be decided as a matter of law where "the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." Estate of Sumner, 162 Vt. at 629, 649 A.2d at 1036 (quotations and citation omitted).
¶ 9. Here, we recognize plaintiffs' argument that but for defendant's unreasonable conduct in driving the uninspected and defective truck Collins would not have died. This alone, however, does not provide a sufficient legal nexus between any defect in the truck and Collins' death. Collins' fatal fall from atop the toolbox could just as easily have occurred had the truck been in perfect repair and properly inspected. See Wilkins, 2005 VT 121, *1212 ¶ 10, 179 Vt. 107, 889 A.2d 245 (explaining that a "defendant cannot be considered a cause of the plaintiff's injury if the injury would probably have occurred without" the defendant's unreasonable conduct (internal quotations omitted)). The fall was not within the natural flow of "injurious consequences" from the truck's defects; indeed, it occurred irrespective of the defects.
¶ 10. The causation issue in this case is similar to that in Rivers. There, two individuals were killed in a car accident with a state prisoner who apparently stole a truck and drove it, while intoxicated, without any lights on. Rivers, 133 Vt. at 12, 328 A.2d at 398-99. The prisoner had been released temporarily on a weekend pass. Id. at 12, 328 A.2d at 399. The plaintiff sued the Vermont Department of Corrections, arguing that it was negligent for issuing the pass to the prisoner and that, but for the pass, the accident would not have occurred. Id. at 13, 328 A.2d at 399. We affirmed a directed verdict for the State, concluding that the weekend pass was not a proximate cause of the victims' death in light of the numerous, independent acts of the prisoner, including "intoxication, theft of a vehicle, driving without lights and without maintaining a proper lookout, and driving at an excessive rate of speed." Id. at 14, 328 A.2d at 400. Similarly here, although defendant did act negligently in operating a defective truck, defendant's conduct was not the proximate cause of plaintiff's injury, because there was no relationship between the defects and the accident.
¶ 11. We turn then to plaintiffs' claim that defendant is liable for Collins' death because he failed to prevent Collins from moving about the bed of the truck, and that, but for defendant's continuing to drive while Collins kneeled on the toolbox and reached around to the passenger-side window, Collins would not have died. This theory raises issues of duty and causation, but because we find defendant breached no duty of care to Collins as a matter of law, we do not address causation here.
¶ 12. Initially, it bears noting that our review reveals no prohibition under Vermont law against carrying passengers in the back of a pickup truck, nor any requirement that such passengers be restrained.[3] Whether this means of transport is wise is, as this case sadly demonstrates, dubious at best. But, in the absence of any legislative pronouncement otherwise, no law prohibited defendant from allowing his intoxicated friends to ride in the bed of the truck. Plaintiffs argue that their position is nonetheless supported by the Restatement (Second) of Torts § 323(a) and § 324(a), as well as by the reasoning of two out-of-state cases. We begin with the Restatement.
¶ 13. Section 323 states:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or

*1213 (b) the harm is suffered because of the other's reliance upon the undertaking.
Restatement (Second) of Torts § 323. Plaintiffs also rely on § 324, which states in relevant part:
One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge[.]
Restatement (Second) of Torts § 324. Plaintiffs' argument under each of these sections is essentially the same, and logically so. As the comments explain, the rule in § 324 is simply "an application of the one stated in § 323," the difference being that under § 324 the plaintiff is "helpless." Id. § 324 cmt. a. Accordingly, for purposes of this case, we treat the two sections as the same.
¶ 14. Plaintiffs claim defendant, contrary to § 323 and § 324, failed to exercise reasonable care after volunteering to drive the intoxicated Collins because he failed to secure Collins' safety "either by having him sit in the cab wearing a seatbelt, or, at least, by stopping the truck after realizing that he was in a precarious position in the bed of the vehicle." We disagree.
¶ 15. By statute that has since been repealed, an operator owed a passenger a duty only to avoid gross negligence. See 23 V.S.A. § 1491, repealed by 1969, No. 194 (Adj.Sess.), § 1 (effective March 12, 1970). The effect of the statute's repeal is to leave the operator with a duty of ordinary care with respect to the passenger. Whether we view this case under the general duty of an operator to a passenger or under the special Restatement duties, the result is generally the same-defendant had a duty not to be negligent in his operation with respect to Collins.
¶ 16. As we stated earlier in the opinion, there is no evidence that defendant negligently operated the truck apart from plaintiffs' assertion that he should have prevented Collins from moving about the truck bed and handing a cigarette to the passenger. Defendant had the right to expect that Collins would avoid conduct as patently dangerous as kneeling on a toolbox in the back of a moving pickup truck while reaching around to the cab. See Blondin v. Carr, 121 Vt. 157, 158, 151 A.2d 121, 122 (1959) (requiring passengers to "exercise reasonable caution and judgment for [their] own safety. . . . [which] must meet the standard of a reasonably prudent person in the situation that prevailed at the time of the accident" (citations omitted)); see also Cota v. Rocheleau, 120 Vt. 391, 396, 141 A.2d 426, 430 (1958) (describing defendants' "right to expect the plaintiff [to] exercise reasonable care to observe and protect himself from obvious dangers" (citations omitted)); Burleson v. Morrisville Lumber & Power Co., 86 Vt. 492, 497, 86 A. 745, 747 (1913) (citing with approval rule of many other states that "voluntary drunkenness does not relieve a drunken man from the degree of care required of a sober man in the same circumstances" (quotations and citation omitted)); Dicranian v. Foster, 114 Vt. 372, 376, 45 A.2d 650, 652 (1946) (same). Here, therefore, we agree with the trial court that defendant breached no duty of care with respect to Collins. We cannot say that defendant knew or should have known that any of his own actions increased the risk to Collins, cf. Restatement (Second) of Torts § 323(a), § 324(a), particularly where plaintiffs present no evidence that defendant knew that Collins had kneeled precariously atop the toolbox, rather than remaining *1214 in the truck bed, when he reached his arm into the passenger-side of the cab.
¶ 17. This case is much more akin to the out-of-state cases cited by defendant than those provided by plaintiffs.[4] In Krieger v. Howell, the Idaho Court of Appeals affirmed a jury's determination that a twelve-year-old boy who rode in the back of a pickup truck on a toolbox was more at fault for injuries related to his fall than the fifteen-year-old driver who offered the ride. 109 Idaho 704, 710 P.2d 614, 618 (1985). Despite the different procedural posture of the case, the Krieger court summarized a critical distinction in pickup-truck cases that is informative to our duty analysis here. It noted that many courts distinguish between "a passenger who places himself in a hazardous position which led to a fall from the vehicle and a passenger who places himself in what would have been a safe position except for the driver's negligent driving." Id. at 617 (collecting cases). The instant case involves the former set of circumstances, such that defendant breached no duty of care to Collins.
¶ 18. In a case even more analogous to the one at bar, both procedurally and substantively, the Supreme Court of Indiana, in Stephenson v. Ledbetter, affirmed summary judgment for the defendant driver of a pickup truck for the death of his friend after the decedent, who was intoxicated, fell from where he was seated on the side-rail of the truck's bed. 596 N.E.2d 1369, 1370 (1992). The court stated:
The only wrong [the defendant] is alleged to have committed was his failure to stop or slow the truck and to compel [the decedent], a competent adult passenger, to sit in a safer position in the truck. We cannot conclude that his failure to do so was a breach of his duty to operate the truck with reasonable care.
Id. at 1372. See also Senese v. Peoples, 626 F.Supp. 465, 468 (M.D.Pa.1985) (granting summary judgment to defendant for injuries related to plaintiff's exiting through a window of a moving pickup truck, rejecting a "duty on the part of a driver of a vehicle to attempt to prevent a passenger from injuring himself when, as here, the passenger has placed himself in a position of peril").
¶ 19. In light of these precedents, we do not agree that defendant breached a duty owed to Collins where Collins engaged in voluntary behavior that substantially increased his risk of injury. As defendant argues, our holding is consistent *1215 with the public policy in favor of designated drivers, recognized by the trial court and other courts. See, e.g., Stephenson, 596 N.E.2d at 1373 ("To hold a driver liable for the irresponsible actions of an intoxicated passenger would cut against [the] important social policy of encouraging the use of designated drivers."). Here, there is no prima facie case of negligence as a matter of law where defendant remained sober, offered his intoxicated friends a ride so that they would not drive themselves, and drove his friends in a non-negligent manner.
Affirmed.
NOTES
[1] Both parties submitted statements of fact. Pursuant to V.R.C.P. 56(c)(2), defendant submitted a statement of undisputed facts and addressed the events during the evening of Collins' death up to and including the accident. Also pursuant to the rule, plaintiffs responded with a statement of disputed facts but addressed only the condition of the truck and whether Collins was drunk at the time of the accident, a matter on which there is actually no dispute. Because plaintiffs have not disputed any of the facts proffered by defendant, we take defendant's statement as admitted, see id., and use that statement in describing the facts. Although we do not find them relevant, we assume that plaintiffs' statements about the condition of the truck are true.
[2] Originally, plaintiffs also sued Thomas, who owned the pickup truck, but he was later dismissed because he filed for bankruptcy.
[3] Certainly, we have no statute like that of New Jersey which prohibits individuals from riding in any portion of a vehicle "not designed or intended for the conveyance of passengers." N.J. Stat. Ann. § 39:4-69; see also Lombardo v. Hoag, 269 N.J.Super. 36, 634 A.2d 550, 561 (1993) (citing with approval application of statute to pickup trucks, noting that "[i]n the absence of any permanent fixtures or seats intended for passengers, the bed portion of a pick-up truck is not designed or intended for the conveyance of passengers.") (quotations and citation omitted).
[4] Plaintiffs cite Coville v. Liberty Mutual Insurance Co., 57 Conn.App. 275, 748 A.2d 875 (2000), and Industrial Waste Service, Inc. v. Henderson, 305 So.2d 42 (Fla.Dist.Ct.App. 1974) (per curiam), both of which are readily distinguishable. In Coville, the court reversed a jury verdict due to an inadequate instruction concerning the driver's duty for voluntarily taking custody of a "helpless" personthe plaintiff, who was his girlfriend and who was intoxicated to the point of "semiconscious[ness]." 748 A.2d at 879. After dragging her into the cab of his truck, the driver, who was also intoxicated, twice reached over to shut the passenger door as she tried to escape the moving vehicle. Id. at 876-77. Eventually she succeeded, sustaining serious injuries. The court deemed it error not to instruct the jury concerning the duty of care set forth in § 324 in these circumstances. Id. at 879. In Henderson, the court affirmed the plaintiff's jury verdict in a case involving a deadly romp on a garbage truck. In light of evidence that the defendant engaged in repeated horseplay with the decedent, who was intoxicated, before he fell from the running board and was run over, 305 So.2d at 43, the court concluded that the jury could reasonably find that the defendant appreciated the risk and should have "acted in a prudent manner to remove the danger by stopping the truck and ceasing the horseplay." Id. at 45. In each of these cases, defendant's inappropriate conduct actively caused the risk that led to the accident.