2015 VT 48











PH West Dover Property, LLC., Frankenberg and Fredreck v. Lalancette Engineers,
Lalancette and Barbara Walowit Realty, Inc. (2013-157)

 

2015 VT 48

 

[Filed 20-Mar-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 48
 
 


 


 
 
 No. 2013-157
 
 


 


 
 
 PH West Dover Property, LLC.,
 Mitchell Frankenberg
 and Jennifer Fredreck
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Windham Unit,
 
 
 
 
  
 
 
 Civil Division
 
 
 
 
  
 
 
  
 
 
 
 
 Lalancette Engineers, Richard
 and Barbara Lalancette
 and Barbara Walowit Realty, Inc.
 
 
 November Term, 2013
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 John
 P. Wesley, J.
 
 
 
 
  
 
 


James A. Valente of Costello Valente &
Gentry, P.C., Brattleboro, for Plaintiffs-Appellants.

 

Potter Stewart, Jr. of Potter Stewart, Jr. Law Offices,
P.C., Brattleboro, for Defendant-Appellee

  Barbara Walowit Realty, Inc.

 

 

PRESENT:       Dooley, Skoglund,
Robinson and Crawford,[1]
JJ., and Eaton and Morris (Ret.),

                    
   Supr. JJ., Specially Assigned

 

 

¶ 1.            
SKOGLUND, J.   Plaintiff buyers in this consumer fraud
action appeal from a summary judgment order in favor of defendant realtor who
represented the seller in the sale of an inn.  Plaintiffs argue that the
trial court erred in concluding that defendant’s alleged misrepresentation and
omission were immaterial as a matter of law.  We affirm.

¶ 2.            
For purposes of our review, we consider the relevant facts in the light
most favorable to the non-prevailing party—in this case, plaintiffs.  Chase
v. Agency of Human Servs., 2011 VT 31, ¶ 14, 189 Vt. 613, 19
A.3d 167 (mem.).  Based on the evidence presented in connection with the
parties’ cross-motions for summary judgment, those facts are as follows. 
Defendant Barbara Walowit Realty, Inc. was the listing agent for an inn in West
Dover.[2] 
After Ms. Walowit secured the listing for the inn, she contacted a
prior-prospective purchaser to renew discussions about a potential sale. 
The prior-prospective purchaser claims she told defendant during their
conversation that she had witnessed flooding in the parking lot and had learned
of “major problems with the roof and that there was a possibility of
collapse.”  The prospective purchaser stated in her affidavit that
defendant told her that flooding was a common occurrence.  There is no
evidence that the prior-prospective purchaser provided any information about
the specific claimed problems with the roof or a description of any flooding,
or any information about the source or basis for her complaints.

¶ 3.            
Following this exchange, defendant asked the seller, who had himself
performed much of the carpentry work at the inn, about the condition of the
roof.  In her deposition, defendant stated that the seller said he
believed the roof to be satisfactory.  Again, in her deposition testimony,
defendant testified she recommended that the seller “secure[]
an estimate” because “this issue might be raised in an inspection and he should
be prepared to be able to either compensate, fix, or do something.”  In
response, the seller gave defendant a document labeled “Roof Materials List”
reflecting the materials cost for shingles, flashing, and nails for 6,600
square feet of roof.  The estimated cost of the materials was
$5,000. 

¶ 4.            
In the meantime, plaintiffs Mitchell Frankenberg and Jennifer Fredreck
formed PH West Dover Property, LLC (hereinafter plaintiffs) for the purpose of
buying an inn.  They contacted defendant, who showed them the property in
West Dover.  Defendant did not disclose to plaintiffs the substance of her
conversation with the prior-prospective purchaser, the $5000 materials estimate
for roof repairs, or any concerns about the condition of the roof.

¶ 5.            
Before entering into a purchase-and-sale agreement with the seller,
plaintiffs received a written disclosure from the seller concerning the
condition of the property.  The “Seller’s Property Information Report”
states “[t]his report is not a warranty of any kind by the seller or by any
real estate agent representing the seller.  This report is not a
substitute for a property inspection.”   The Report stated that the
seller was aware of no “current problems with the roof,” and that there was no
“flooding, drainage or grading problems on the property.”  Plaintiffs
entered into a purchase-and-sale agreement with the seller in December
2007.  The agreement contained an inspection contingency.

¶ 6.            
At the recommendation of defendant, plaintiffs then hired Lalancette Engineers
to perform a pre-purchase structural inspection of the property, and received
an inspection report in late January 2008.  The report included a
statement that “[t]he visible portion of the upper roof on the main inn is
showing signs of wear and should be kept under observation.  Resurfacing
of this portion of the roof should be planned for within the next three to five
years.”  Specifically, the report recommended replacement of
“torn and missing shingles at a few locations . . . and repair of active roof
leaks that were noted in the right attic at the right front plumbing vent and
right rear metal chimney.”  

¶ 7.            
The sale closed in May 2008.  In September 2008, after encountering
various problems relating to the condition of the inn, plaintiffs sued
defendant for negligence and consumer fraud for defendant’s alleged
misrepresentations and omissions concerning the condition of the inn.[3]  Plaintiffs and defendant filed
cross-motions for summary judgment.  

¶ 8.            
On the claim of negligence, the trial court granted summary judgment to
defendant.  That ruling is not before us on appeal.  As to the claim
of consumer fraud, the court considered, among other things, defendant’s
alleged failure to disclose the contents of her conversation with the
prior-prospective purchaser and to disclose the estimate of roof repair costs
that was in her files.  The court concluded that the statements from the
prior-prospective purchaser were “simply too vague and foundationless to give
rise to knowledge of specific material facts that [defendant] would have a duty
to disclose” under the Consumer Fraud Act.[4]  The court further concluded
that defendant’s failure to disclose the roof-repair estimate was not a
material omission because plaintiffs “already knew the roof needed repairs”
from the Lalancette report, and disclosure “would have left them in the same
position in which the report placed them; needing to make further inquiry.” 
Thus, the court concluded that the estimate “cannot be considered material as a
matter of law,” and granted judgment to defendant.  Plaintiffs appealed.

¶ 9.            
We review de novo a motion for summary judgment, applying the same
standard of review as the trial court.  Madowitz v. Woods at Killington
Owners’ Ass’n, 2010 VT 37, ¶ 9, 188 Vt. 197, 6
A.3d 1117.  Summary judgment is appropriate only when
“the record clearly shows that there is no genuine issue of material fact and
that the movant is entitled to judgment as a matter of law.”  Id. (quotation omitted); see
V.R.C.P. 56(a).  Therefore, we afford the nonmoving party
“the benefit of all reasonable doubts and inferences.”  Doe v. Forrest, 2004 VT 37,
¶ 9, 176 Vt. 476, 853 A.2d 48.

¶ 10.         We
have recognized that “[r]eal estate brokers and agents are marketing agents,
not structural engineers or contractors.  They have no duty to verify
independently representations made by a seller unless they are aware of facts
that tend to indicate that such representations are false.”  Provost v. Miller, 144 Vt. 67, 69-70, 473 A.2d 1162, 1164
(1984) (quotation omitted).  They can, however, be liable under the
consumer protection statute for misrepresenting or omitting facts known to them
that are important enough to affect a reasonable buyer’s conduct.  Vastano
v. Killington Valley Real Estate, 2007 VT 33, ¶¶ 8-10, 182 Vt. 550,
929 A.2d 720 (mem.); see also 9 V.S.A. § 2453(e) (affirming that consumer
protection requirements apply in real estate transactions).  

¶ 11.         To
establish an unfair or deceptive act pursuant to the consumer protection
statute, 9 V.S.A. § 2453(a), plaintiffs must show: (1) a representation,
omission, or practice likely to deceive them; (2) that they interpreted the
message reasonably under the circumstances; and (3) that the omission was
“material, that is, likely to affect [their] conduct or decision.”  Vastano, 2007 VT 33, ¶ 8 (alteration in original)
(quotation omitted).  The question of whether a misrepresentation
or omission is material is “generally measured by an objective standard,
premised on what a reasonable person would regard as important in making a
decision.”  Id. ¶ 9 (quotation omitted). 


¶ 12.         We
first consider the statements from the prior-prospective purchaser to defendant
about the condition of the roof and the flooding.  “We have distinguished
statements of fact from statements of opinion in the consumer-fraud context,
holding that misrepresentations of the former may constitute fraud while
misrepresentations of the latter cannot.”  Heath v.
Palmer, 2006 VT 125, ¶ 14, 181 Vt. 545, 915 A.2d 1290 (mem.). 
While the prior-prospective purchaser’s statements to defendant do not fall
neatly in either category, we agree with the trial court that they were not
sufficiently specific to impute knowledge of defects in the property to
defendant, nor to require disclosure of material
information that might affect a reasonable consumer’s conduct or
decision.  

¶ 13.          The
prior-prospective purchaser’s statements to defendant, given as a reason for
declining an earlier opportunity to make a purchase, are second-hand reports—unsupported
by evidence or foundation—which are either too unreliable or too vague to
require disclosure.  To require the realtor to relate every nonspecific
and unattributed rumor to subsequent buyers would be unreasonable.  The
mischief of such a requirement is obvious from this case.  Although the
roof shingles required replacement, no one with real knowledge about the
condition of the inn has claimed that the roof structure was at risk of
collapse.  The record contains no evidence that the prior-prospective
purchaser was qualified to offer a reliable assessment of the roof.  The
prior-prospective purchaser’s statements provided no basis to impose a duty on
defendant to investigate.  

¶ 14.         Similarly,
the report of flooding in the parking lot was too vague.  Does “flooding”
mean that puddles formed when it rained, or does it mean that customers’ cars
were routinely immersed in deep water?  The first condition is too minor
to bear repetition; the second—although inherently improbable—would obviously
require disclosure.  Although we join the trial court in accepting
plaintiffs’ facts to be true for purposes of summary judgment, neither court
may extend and embroider upon the affidavits.   We assume that
plaintiffs have provided the strongest and most complete evidence available to
support the claim of misrepresentation.  The claim is limited to a
nonspecific complaint of “flooding,” which was too vague to require disclosure
to other customers.[5] 
Before the severe consequences of the consumer protection statute fall upon a
realtor, the trial court must be satisfied that the information offered by
third parties has sufficient reliability and specificity to require that the
realtor pass the information along to anyone else who expresses interest in the
property.  The prior-prospective purchaser’s statements—accepted on their
face as true—did not meet this standard.   

¶ 15.         We
now consider defendant’s failure to disclose the written estimate of roof
repair costs to plaintiffs.  The trial court awarded summary judgment to
defendant on the ground that her omission of the estimate was not material
because plaintiffs had independent knowledge of the information.  Unlike
the statements by the prior-prospective purchaser, this estimate is the type of
concrete, specific information that is material and should be disclosed to a
potential buyer.  The omission of this information, as well as the
affirmative representation that seller was aware of “no current problems with
the roof” could give rise to a violation of the consumer protection
statute.  To the extent that the trial court concluded that information
subsequently acquired by plaintiffs rendered this representation and omission
immaterial, we part ways with the trial court.  However, our own analysis
leads to the same conclusion as that of the trial court, albeit through a
slightly different path.  See In re Cabot
Creamery Coop., Inc., 164 Vt. 26, 29, 663 A.2d 940, 941-42 (1995)
(explaining that this Court can affirm on
different grounds than relied upon by trial
court).   In our view, the plaintiffs’ case fails for lack of proof
on the element of causation and not because the information withheld was
immaterial.    

¶ 16.         As
the trial court recognized, plaintiffs received essentially the same
information from their own engineer.  This information was received within
the time allowed for cancellation of the purchase-and-sale agreement. 
Plaintiffs closed on the transaction knowing that the shingled portion of the
roof needed replacement within a few years and that roof leaks around a chimney
required immediate attention.  

¶ 17.         Courts
in other jurisdictions have consistently held that a buyer of real estate who
has independent knowledge of material information that the realtor fails to
disclose cannot recover under applicable consumer protection statutes because
the omission did not cause the buyer’s injury.  See Graham v. Muldoon,
No. L-2240-07, 2010 WL 4940041, at *2-3 (N.J. Super. Ct. App. Div. Dec. 7, 2010) (unpub.) (holding that buyer of
refurbished house could not show that sellers’ marketing statements caused
buyer’s damages resulting from backup of antiquated sewer system where buyer
admitted that he was aware prior to closing that sewer was not newly
constructed); Camden Mach. & Tool, Inc. v. Cascade Co., 870 S.W.2d
304, 312-13 (Tex. App. 1993) (holding that, because buyer knew of problems with
foundation of house prior to closing, realtor’s misrepresentations that cracks
in foundation were insignificant were not “producing cause” of his injury); Dubow
v. Dragon, 746 S.W.2d 857, 860-61 (Tex. App. 1988) (holding that buyers of
house with faulty foundation could not recover against sellers under consumer
protection act where buyers hired inspector who informed them of foundation
problems prior to closing and buyers decided to go ahead with purchase
anyway).  

¶ 18.         Courts
have reached similar conclusions with regard to transactions not involving real
estate.  In Lord v. Commercial Union Insurance Co., 801 N.E.2d 303
(Mass. App. Ct. 2004), the trial court found that the plaintiff’s automobile
insurer committed a deceptive act by failing to send him timely notice of the
suspension of his coverage. It ruled, however, that because the plaintiff had
independent knowledge of the cancellation, the lack of required notice from the
insurer was not a cause of his loss.  Despite this ruling, it awarded the
plaintiff nominal damages and attorney’s fees. The Massachusetts Appeals Court
reversed the damages award because damages were not available “absent a finding
of at least some causation of injury.”  Id. at
314.

¶ 19.         Although
Lord was later overruled on other grounds by the Massachusetts Supreme
Judicial Court, the high court agreed with Lord’s observation that the
legislature did not intend for plaintiffs to recover under the consumer
protection act for deceptive acts that did not cause injury.  See Aspinall
v. Philip Morris Cos., 813 N.E.2d 476, 491 (Mass. 2004) (“[This
proposition] states nothing more than what our own decisions have made
perfectly clear—causation is a required element of a successful [consumer
protection] claim.”).  The requirement of causation is the general rule in
cases where consumers have independent knowledge of false statements and
omissions.  See, e.g., Zekman v. Direct Am. Marketers, Inc., 695
N.E.2d 853, 861-62 (Ill. 1998) (holding that plaintiff could not recover from
AT&T for consumer fraud where he knew that he would be charged for calling
“900” numbers because AT&T’s allegedly deceptive acts did not proximately
cause his damage); McGraw v. Loyola Ford, Inc., 723 A.2d 502, 512 (Md.
Ct. Spec. App. 1999) (holding that car dealer was not liable for consumer fraud
for checking box indicating that car sold to buyer was “new,” where buyer knew
that car was demonstration model with 6100 miles on it prior to consummating
the transaction, because buyer could not prove that the representation caused
him any injury or loss).

¶ 20.         We
follow these decisions in holding that a buyer may not recover under Vermont’s
consumer protection statute for omission of information by the seller or his
agent when, as in the circumstances of this case, the buyer has independent
knowledge of the same information prior to the completion of the sale. 
Vermont’s consumer protection statute provides a private cause of action for a
consumer “who contracts for goods or services in reliance upon false or
fraudulent representations or practices . . . or
who sustains damages or injury as a result of [such representations or
practices].”  9 V.S.A. § 2461(b) (emphasis added).  Because the
record is undisputed that the information about the need to replace the roof
was known to plaintiffs, we agree with the trial court that defendant’s failure
to provide the seller’s estimate of repair costs to plaintiffs cannot satisfy
the requirements for liability under the consumer protection act.

Affirmed.

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 

 

¶ 21.         DOOLEY,
J., dissenting.  
One of the most important requirements for a case to be decided on summary
judgment is that no material issue of fact exists after we draw all inferences
from the information in the record in favor of the nonmoving party.  See Collins
v. Thomas, 2007 VT 92, ¶ 6, 182 Vt. 250, 938 A.2d 1208 (“We review an
award of summary judgment de novo, construing all doubts and inferences in
favor of the nonmoving party.”); see also Chase v. Agency of Human Servs.,
2011 VT 31, ¶ 14, 189 Vt. 613, 19 A.3d 167 (mem.) (stating
that for purposes of review on summary judgment, we consider relevant facts in
light most favorable to nonmoving party).  In upholding the trial court’s
grant of summary judgment to the defendant realtor, the majority purports to
honor this requirement, but does not actually do so.  In my view, doing so
would compel us to reverse the trial court’s decision and allow a jury to
determine whether defendant’s statements or omissions were misleading and
caused plaintiffs to sustain damages.  Accordingly, I respectfully
dissent.

¶ 22.         In
emphasizing my point of disagreement, I also emphasize that I concur with the
majority’s statement of the settled substantive law underlying this case. 
A seller’s real estate agent has “no duty to verify independently
representations made by a seller unless [the agent is] aware of facts that tend
to indicate that such representations are false.”  Provost
v. Miller, 144 Vt. 67, 70, 473 A.2d 1162, 1164 (1984) (quotation omitted). 
An agent may be liable under the consumer protection act (CPA),[6] however, for misrepresenting or omitting
facts known to the agent and important enough to affect a reasonable buyer’s
conduct.  See Vastano v. Killington Valley Real Estate, 2007 VT 33,
¶ 8, 182 Vt. 550, 929 A.2d 720 (mem.) (stating
that plaintiffs claiming unfair or deceptive act under CPA must show that: (1)
there was representation or omission likely to mislead them; (2) plaintiffs
“interpreted message reasonably under circumstances”; and (3) misleading
misrepresentation or omission was “material—that is, likely to affect [their]
conduct or decision with regard to” transaction that was subject of
misrepresentation or omission (alteration in original) (quotation omitted));
see also Carter v. Gugliuzzi, 168 Vt. 48, 57, 716 A.2d 17, 24 (1998) (finding
omission material where “it plainly could have affected the parties’
negotiations or the purchase price”).  Here, the facts proffered by
plaintiffs were sufficient for a reasonable jury to determine that defendant
omitted, or knowingly allowed the seller to misrepresent, information that
could have impacted plaintiffs’ decision whether to purchase the subject
property and, if so, at what price.

¶ 23.         As
the majority points out, in determining whether defendant possessed information
contrary to what the seller disclosed to plaintiffs, the parties and the court
focused on statements that a prior-prospective purchaser made to defendant and
a roof estimate produced by the seller at defendant’s suggestion following her
conversation with the prior-prospective purchaser.  Based on information
submitted in the record, plaintiffs made three claims that defendant’s
nondisclosure, and participation in wrongful nondisclosure by the seller,
injured them.  Plaintiffs claimed defendant failed to disclose that: (1)
she had been told that there was flooding and mold in the basement and flooding
in the parking lot; (2) she had been told that there were structural
deficiencies in the roof support system such that there was a threat of roof
collapse; and (3) the seller estimated that 6600 square feet of the roof would
need resurfacing at a materials cost of $5000.

¶ 24.         In
response, the majority concludes that the prior-prospective purchaser’s
statements were not sufficiently specific either to impute to defendant
knowledge of defects in the property or to require disclosure of the statements
as material information that might affect a reasonable consumer’s conduct or
decision.  According to the majority, the statements were “second-hand
reports” too vague and unreliable to require disclosure.  Ante, ¶ 13.  The majority further concludes
that any wrongful nondisclosure with respect to the need for replacing shingles
on the roof was harmless because plaintiffs knew from the report of their home
inspector that the replacement of shingles was needed.  These responses
should not prevail if we properly apply the requirements for summary judgment.

¶ 25.         I
start with the claim of flooding and mold because it most clearly demonstrates
why I believe the majority has erred.  This claim is based on the
affidavit of the prior-prospective purchaser, which states that: (1) she
visited the subject property between July and November 2007—only a few months
before plaintiffs signed a purchase-and-sale agreement on the property—at which
time she “learned of major problems with the roof and that there was a
possibility of collapse”; (2) during her visit, she “witnessed flooding and
mold in the basement” and “witnessed flooding in the parking lot”; (3) after
her visit, she indicated that she was no longer interested in purchasing the
property because of the problems and the seller’s refusal to fix them; (4)
after obtaining the listing for the subject property, defendant contacted her
to attempt to renew discussions about purchasing the property; (5) she told
defendant at that time “about the problems with the building (including
specifically that the roof threatened to collapse)”; (6) she advised defendant
“about flooding in the parking lot” but defendant responded that “flooding was
a common occurrence”; and (7) she told defendant that she was not interested in
purchasing the property “due to [its] structural problems.”  It is
important to understand that these statements were made by an apparently
disinterested person who was investigating whether to make a $1.2 million real
estate purchase but who ultimately decided not to because of deficiencies in
the building and surrounding property.

¶ 26.         The
majority rejects the sufficiency of the affidavit with respect to the flooding
and mold because the prior-prospective purchaser’s statements do not fall
“neatly” and exclusively within the category of “facts,” as opposed to
opinions; were “not sufficiently specific to impute knowledge of defects in the
property to defendant”; were “second-hand reports—unsupported by evidence or
foundation” and “too unreliable or too vague to require disclosure”; were
“nonspecific and unattributed rumor”; and could mean anything as innocuous as
“puddles formed when it rained.”  Ante, ¶¶ 12-14. 
If we fairly apply the requirement that we draw all inferences from the
information in the record in favor of the nonmoving party, the majority’s
reasons are inadequate.

¶ 27.         Before
I get to the inference rule, however, I emphasize that the statements in the
affidavit were ones of fact and not opinion—“I witnessed flooding and mold in
the basement” and “I witnessed flooding in the parking lot.”  While more
detail is always desirable, I fail to see how a first-hand observation of
flooding or mold is not sufficiently specific or too vague.  The
statements in the affidavit with respect to flooding and mold are not
“second-hand reports” and are not based on “rumor.”

¶ 28.         But
the most significant deficiency in the majority’s reasoning is its failure to
apply the requirement that inferences from the facts in the record be drawn in
favor of plaintiffs, as the nonmoving party, and not defendant.  The
majority’s failure to implement the rule is best demonstrated by its reasoning
that flooding in the parking lot could mean “puddles formed when it rained” and
that, because of that possible interpretation, the statement was too vague to
hold that defendant should have acted upon it.  It is not credible that a
person who is considering whether to spend $1.2 million to buy an inn would be
put off by puddles in the parking lot.  I doubt if the word flooding has
ever been used to describe puddles after a rain, but in this case the word was
used in the context of a discussion in which the prior-prospective purchaser
was explaining to the real estate agent why she was not interested in
purchasing the property.  A reasonable jury could certainly infer that she
was speaking of significant water issues on the property.

¶ 29.         Even
if I thought that the majority’s characterization was credible, the majority is
relying on an inference from the affidavit, an inference that requires looking
at the factual statement in the light least favorable to
plaintiffs.  Whether one draws the inference against the nonmoving party,
or holds that because one can draw an inference against the nonmoving party the
statement is vague, the result is the same and we are failing to honor the
requirement that we draw inferences in favor of the nonmoving party.

¶ 30.      The proper inferences
to draw here are that the flooding in the basement and parking area and the
mold in the basement were such serious deficiencies in the property that they
caused a prospective purchaser not to purchase the property, and that if
plaintiffs had known of statements regarding such deficiencies, they may not
have purchased the property or may have negotiated a lower price.  Surely,
any prospective purchaser would want to know if there was any kind of
“flooding” in the basement or elsewhere on the property.  Indeed, that is
why one of the standard questions on the disclosure form prepared by the seller
asks if there is “any flooding” problems on the property.

¶ 31.         If a
jury credited plaintiffs’ case on this issue, they could have found that defendant
was liable for not disclosing the information she obtained from the
prior-prospective purchaser and for transmitting the representation from the
seller that there was no “flooding, drainage or grading problems on the
property.”  Thus, the affidavit from the prior-prospective purchaser
satisfies our well-established summary judgment standard.  Summary
judgment is appropriate only when “the record clearly shows that there is no
genuine issue of material fact and that the movant is entitled to judgment as a
matter of law.”  Madowitz v. Woods at Killington Owners’ Ass’n,
2010 VT 37, ¶ 9, 188 Vt. 197, 6 A.3d 1117 (quotation omitted); see V.R.C.P. 56(a).  If the evidence presented on a motion
for summary judgment is subject to conflicting interpretations, or reasonable
people might disagree as to its significance, “summary judgment is
improper.”  10A C. Wright et al., Federal Practice and Procedure
§ 2725, at 433-37 (1998) (citing federal and state cases).  In my
judgment, the majority has failed to apply this standard.

¶ 32.         This
brings me to the second claim—that defendant should have disclosed the
statement from the prior-prospective purchaser that the building had a
structural deficiency such that there was a possibility that the roof would
collapse.  The affidavit stated that the prospective purchaser learned of
this deficiency when she visited the building and that the seller refused to
fix the deficiencies.  She specifically identified the collapse risk as a
fact that she related to defendant.  I recognize that imposing a duty to
disclose the potential roof collapse runs into some of the majority’s arguments
detailed above and makes the issue a closer call.  The prior-prospective
purchaser never claimed that she saw the structural deficiency so it is likely
that the information was second-hand.  The prior-prospective purchaser did
say, however, that she learned of the structural defect during a visit to the
inn, so it is a reasonable inference that the information came from someone who
knew specifically about the roof structure.  While the question is closer,
I believe that if we draw reasonable inferences from the facts in the record,
there is enough information in the record to reserve for the jury the question
of whether defendant should have disclosed this information.

¶ 33.         I cannot
accept the majority’s specific objections to requiring defendant to disclose
the collapse threat.  The majority reasons as follows: nothing in the
record suggests that the prior-prospective purchaser was qualified to assess
the condition of the roof and no one “with real knowledge about the condition
of the inn has claimed that the roof structure was at risk of collapse.”  Ante, ¶ 13.  I agree that it is not a
reasonable inference that the prospective purchaser is an expert in roof
structures, but it is a reasonable inference that she learned of the threat of
roof collapse during her visit from someone who could make that judgment.

¶ 34.         As to
the second objection, the record contains evidence that shortly after
plaintiffs purchased the property they had to rectify significant structural
problems with the roof.  The exhibits in this case include reports
prepared in July 2008—a mere two months after plaintiffs closed on the
property—by an engineering firm and another home inspection company detailing
the multiple serious structural problems with the roof that required immediate
attention.  The reports, among other things, recommended remedying a
failed roof support system to avoid serious injury and financial loss.  In
a July 2011 affidavit, plaintiffs indicated that they had already incurred
significant expenses addressing problems with the roof and had received an
estimate of $120,000 from a construction firm to fully remedy the problem.

¶ 35.         I
recognize that the July 2008 reports had not been done at the time of the
conversation between defendant and the prior-prospective purchaser.  But
this evidence in the record undercuts the majority’s suggestion that the
prior-prospective purchaser’s statements regarding serious problems with the roof
were vague and unreliable.  Again, they were made in the context of a
person who was explaining why she ultimately decided not to purchase a property
in which she had a genuine interest.  A reasonable jury could have
concluded that defendant withheld from plaintiffs information regarding the
condition of the roof that she knew to be contrary to what the seller was
claiming in his disclosure statement—that he did not know of any current
problems with the roof.  

¶ 36.         The
third claim with respect to defendant’s responsibility, and the second one
involving the roof, is that defendant should have disclosed the written
estimate[7]
of roof repair that defendant suggested the seller obtain following her
conversation with the prior-prospective purchaser.  This evidence concerns
the condition of the roof’s covering rather than the soundness of its
structure.  The majority acknowledges that this estimate was material and
the type of concrete, specific information that should have been disclosed to
plaintiffs, and further that its omission could give rise to a violation of the
CPA.  The majority concludes, however, that plaintiffs’ claims fail with
respect to this information because, as a matter of law, plaintiffs cannot prove
causation.  According to the majority, plaintiffs had independent
knowledge of the same material information within the time allowed for
cancellation of the purchase-and-sale agreement.  In the majority’s view,
defendant’s failure to disclose this information cannot result in liability
under the CPA because “the record is undisputed that the information about the
need to replace the roof was known to plaintiffs.”  Ante,
¶ 20.

¶ 37.         The
deficiency in this analysis is that its premise is incorrect—the information
was not the same.  Indeed, there is nothing in the record indicating that
plaintiffs knew that the roof surface was in need of replacement in the
immediate future.  Rather, the trial court concluded that plaintiffs knew
from their own inspection report that the roof needed repairs and that they
relied upon that report.

¶ 38.         The
inspection report produced by plaintiffs’ home inspector after they signed the
purchase-and-sale agreement did not cover all the same ground or include the same
content as the information allegedly omitted or misrepresented by
defendant.  The inspection was based on a visual assessment, and the
report expressly disclaimed responsibility for conditions that could not be
seen due to partial snow cover.  The summary at the beginning of the
report stated that the roof was “showing signs of wear and in need of some
repair,” but the section of the report dedicated to the roof stated that the
“roofing is in good to fair condition.”  The report noted active leaks at
two discrete areas near a plumbing vent and one of the chimneys and stated that
resurfacing of the upper roof should be planned for within the next
three-to-five years because the roof was showing signs of wear.  The
report stated that minor leakage should be expected from time to time for any
roof, regardless of its age, and that repairing such leaks is easily
accomplished.  The only immediate action recommended, aside from remedying
the two minor leaks, was replacing “torn and missing shingles at a few locations
on the upper roof.”

¶ 39.         In
sharp contrast, the estimate produced by the seller was for a huge area of the
roof—6600 square feet—presumably the entire roof apart from the rubberized
portion.  The $5000 estimate included only the cost of materials to repair
the roof, not the total repair costs.  Plaintiffs proffered an affidavit
from a carpenter and roofer estimating a total cost of approximately $19,000 to
replace 6600 square feet of roof with the materials listed in the seller’s estimate.


¶ 40.         Again,
the question before us involves inferences from information in the
record.  I recognize that one possible interpretation of the estimate is
that it was purely hypothetical: if the roof needed to be replaced for
some reason, this is how much the materials would cost.  Under this view,
the estimate would not convey any information to defendant about the state of
the roof or the need for repairs, so it would not support plaintiffs’ claim
that defendant knowingly participated in a material misrepresentation
concerning the state of the roof.  As with the inferences about the
flooding and mold, however, this inference should not be drawn in favor of the
nonmoving party.  Rather, the inference we must apply is that the
calculation of the cost of materials to replace 6600 square feet of roofing
reflected a conclusion by the seller—a carpenter who had been deeply involved
in work on the inn—that 6600 square feet of roof needed to be replaced.

¶ 41.         Based
on this inference, a reasonable jury could conclude that this fact would have
been more alarming to buyers than knowledge of torn and missing shingles at a
few locations and of the need for long-term observation of the upper
roof.  And a reasonable jury could conclude that a buyer with knowledge of
the estimate might not purchase the property or might be willing to pay
commensurately less for the property on account of the disrepair.  Indeed,
this conclusion is supported by defendant’s deposition testimony that the
condition of a roof is a material fact, and that she urged the seller to get an
estimate because if the issue of the roof came up in negotiating a contract, he
should be prepared to “compensate, fix, or do something.”

¶ 42.         It is
also supported by the affidavit of plaintiff Frankenberg, which stated that he
and his wife relied on the representations in the seller’s disclosure in
deciding to contract to purchase the inn.  He further stated that had
defendant informed him that the roof was in need of repair, and had she provided
the materials estimate, he would have had his own roofing expert provide him a
full repair estimate, would have negotiated a sale price with the seller based
on the estimate or given up interest in the inn altogether, and would have
further investigated the condition of the roof and the attic.  This
testimony directly contradicts the inference inherent in the majority’s
position.

¶ 43.         The
majority’s position also fails to recognize inferences that a jury could draw
from the temporal relationship among the events occurring in this case. 
Plaintiffs did not have an inspection done until after the parties
entered into a purchase-and-sale agreement.  On the other hand, defendant
forwarded the disclosure statement indicating that there were no known current
problems with the roof before the parties signed an agreement.[8]  Although plaintiffs arguably could
have sought to renegotiate the agreement pursuant to the inspection contingency
in their contract as a result of their inspector’s report, by that time they
stood in a materially different position—they had paid a $10,000 deposit and
had signed a contract at a set contract price—than they were in at the time of
the alleged misrepresentations or omissions.  Given plaintiffs’ insistence
on a disclosure statement from the seller before they signed a
purchase-and-sale agreement, and plaintiff Frankenberg’s statement concerning
the steps he would have taken in the absence of the alleged misrepresentations,
we should not conclude as a matter of law that disclosure of the roof surface
problems before the parties signed the purchase agreement would not have
affected plaintiffs’ conduct.

¶ 44.         In
short, a jury could reasonably conclude that plaintiffs’ response to the report
provided by their inspector, in the face of a representation that there were no
known problems with the roof, was very different from the response plaintiffs
would have had if they had learned that the seller concluded that 6600 square
feet of roof needed replacement.[9] 
Plaintiffs’ access to and receipt of information from their home inspection
report or other sources, and their failure to act thereon, may well affect a
jury’s assessment of damages arising from any misrepresentation or omission,
but that fact does not support the majority’s ruling that there was no
causation as a matter of law.  See Kriz v. Schum, 549 N.E.2d 1155,
1159 (N.Y. 1989) (stating that legal causation is determination left to jury
unless “only one conclusion may be drawn from the established facts” (quotation
omitted)).  

¶ 45.      I would reverse the
trial court’s summary judgment decision and hold that each of plaintiffs’ three
claims against defendant is sufficiently supported in the record to compel us
to conclude that issues of material fact remain in dispute.  Accordingly,
I dissent from the majority’s decision not to do so.

¶ 46.      I am authorized to
state that Justice Robinson joins in this dissent.

 

                                                              
_______________________________________

                                                             
Associate Justice

                                                          


 

 

 














[1] 
Justice Crawford was present for oral argument, but did not participate in this
decision.  Judge Morris (Ret.) was not present for oral argument, but
reviewed the briefs, listened to oral argument, and participated in this
decision.





[2] 
For ease of use in the opinion, we refer to defendant as the individual rather
than the company.

 





[3] 
Plaintiffs also sued Lalancette Engineers, but those claims are not before us
in this appeal. 

 





[4] 
The Legislature has since amended the statute to substitute the term “consumer
protection” for “consumer fraud.”  See 9 V.S.A. § 2453.





[5]
 The prior-prospective purchaser’s affidavit states that defendant advised
her that flooding was a common occurrence.  Plaintiffs did not rely
upon this statement as an independent basis for liability under the consumer
protection statute in their memoranda submitted to the trial court or in the
briefs filed in this appeal.  To the extent that defendant’s statement
substantiates the prior-prospective purchaser’s statements, it adds little to
the summary judgment analysis because we accept as true plaintiffs’ claim that
the prior-prospective purchaser made the statements described in her affidavit. 
See Forrest, 2004 VT 37, ¶ 9 (explaining that nonmoving party is
entitled to benefit of all reasonable doubts and inferences on review of motion
for summary judgment).  





[6] 
As the majority points out, in 2012, the Legislature substituted the term
“consumer protection” for the term “consumer fraud” in the statutory sections
contained in Chapter 63 of Title 9 of the Vermont Annotated Statutes.  2011, No. 136 (Adj. Sess.), § 1a.





[7] 
Defendant suggests that the order of events is unclear from the record, and
that there is no evidence that defendant was actually aware of the estimate and
failed to disclose it.  Defendant testified that the seller prepared the estimate
and gave it to her, that the document was in her file, that
the purpose of the estimate was to help the seller negotiate in the event that
plaintiffs or their inspector raised an issue about the roof, and that
defendant never disclosed the estimate to plaintiffs.  Although defendant
testified that she did not recall when the seller gave her the estimate, a jury
could infer from this evidence that defendant knew about and failed to disclose
the need for repairs to the roof.





[8] 
While defendant signed the disclosure statement only to indicate that she had
delivered a copy to the potential buyers, a jury could find that she provided
the statement to plaintiffs despite being aware of information indicating that
the statement was inaccurate.

 





[9] 
I recognize that plaintiffs also sued their original home inspector based on
claims that the inspection was negligent and that the inspector should have
discovered problems with the roof.  Thus, one could argue that a competent
home inspection report, such as the one obtained by plaintiffs after they
bought the property, would have made plaintiffs aware of any structural or
other problems with the roof that required immediate attention.  But
defendant has not, and cannot, claim a lack of causation based upon an
apparently incomplete home inspection done by the home inspector she
recommended to plaintiffs.  Indeed, it is the majority, not defendant or
the trial court, that is relying upon lack of
causation to support a grant of summary judgment in favor of defendant.